IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE / JOHN DOES 1-144<br><br>Plaintiffs,<br><br>v.<br><br>CHIQUITA BRANDS INTERNATIONAL, INC. and DAVID DOES 1-10<br><br>Defendants. | Case No.:<br><br>CIVIL JURY TRIAL DEMANDED |

### PLAINTIFFS' *EX-PARTE* MOTION
### TO COMMENCE AND PROCEED WITH ACTION USING PSEUDONYMS

Plaintiffs Jane / John Does 1-144, by and through their undersigned counsel, hereby move to commence and proceed with the above captioned case using pseudonyms. This motion is made because disclosure of Plaintiffs' names would subject them to serious physical harm, including death, in retaliation for commencing this action. The basis for their Motion is set forth in greater detail in the accompanying Declaration of Paul David Wolf, *Esq.* and Plaintiffs' Memorandum of Points and Authorities.

Respectfully submitted on this ___ day of June, 2007 by:

_[signature]_
Terry Collingsworth
D.C. Bar 471830
International Rights Advocates
2001 S Street NW #420
Washington, D.C. 20002
202-347-4100 ext 104
tc@iradvocates.org

*[signature: Paul Wolf]*

Paul Wolf
D.C. Bar 480285
PO Box 11244
Washington, D.C. 20008-1244
Tel. (202) 674-9653

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE / JOHN DOES 1-144<br><br>Plaintiffs,<br><br>v.<br><br>CHIQUITA BRANDS INTERNATIONAL, INC.<br>and DAVID DOES 1-10<br><br>Defendants. | Case No.:<br><br>CIVIL JURY TRIAL DEMANDED |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS'** *EX-PARTE* **MOTION TO COMMENCE AND
PROCEED WITH ACTION USING PSEUDONYMS**

Plaintiffs Jane / John Does 1-144, by their undersigned counsel, hereby submit this Memorandum of Points and Authorities in support of their *Ex-Parte* Motion To Commence and Proceed With Action Using Pseudonyms. As set forth below, Plaintiffs face a very real threat of physical injury and death if their identities and addresses are disclosed publicly, and accordingly believe that an order permitting them to commence and proceed with this action using pseudonyms is appropriate in this action and should be granted.

**I. FACTUAL BACKGROUND**

This case arises under the Alien Tort Statute, 28 U.S.C. § 1350 and the Torture Victims Protection Act, 28 U.S.C. § 1350 (*note*) for the intimidation and murder of Plaintiffs' family members by paramilitary groups receiving material support from Defendant Chiquita Brands International, Inc.[1] *See* Plaintiffs' Complaint ("Pls. Cmplt.") at ¶¶ 2, 6.

---
[1] In their proposed Complaint, Plaintiffs also raise several supplemental common law tort

By way of background, Plaintiffs' relatives lived on or near banana plantations operated by Defendants in the Uraba and Santa Marta regions of Colombia, South America, and were murdered as a result of Defendants unlawful association with the Autodefensas Unidas de Colombia (United Self-Defense Forces of Colombia, hereinafter "A.U.C."). *Id.* at ¶¶ 10, 206. As explained in Plaintiffs' Complaint, the A.U.C. is a violent, right-wing paramilitary organization operating in Colombia. *Id.* at ¶ 215. It was formed in or about April 1997 to organize loosely-affiliated illegal paramilitary groups that had emerged in Colombia to retaliate against left-wing guerrillas fighting the Colombian government. *Id.* The A.U.C.'s activities include assassinating union leaders and suspected guerrilla supporters, drug trafficking, kidnapping, and the murder of civilians. *Id.* As detailed in Plaintiffs' Complaint, from 1997 to 2004, the A.U.C. murdered at least 10,000 people in Colombia, burying many of the bodies in mass graves. *Id.* at ¶ 217. Since September 10, 2001, the A.U.C. has also been designated as a foreign terrorist organization by the U.S. Secretary of State. *Id.* at ¶ 216.

Plaintiffs assert that Defendant Chiquita has maintained a long and well known relationship with the A.U.C. by providing money and arms to maintain its business operations in the region where Plaintiffs and their families live. *Id.* at ¶¶ 219-227.

Accordingly, Plaintiffs believe that because of Defendants' unlawful ties with the notorious A.U.C., public disclosure of their names and addresses will no doubt subject them and their families to grave danger, including death, as retaliation for bringing suit against Defendant

---

claims against the Defendants. *See* Pls. Cmplt at ¶¶ 240-278.

Chiquita. *See* Declaration of Paul David Wolf in Support of Plaintiffs' *Ex-Parte* Motion to Commence and Proceed With Action Using Pseudonyms (hereinafter "Wolf Decl.") at ¶¶ 4, 5, 9.

## II. LEGAL PRINCIPLES

It is now well-settled that the Court has discretion to permit plaintiffs to proceed anonymously. "The decision whether to permit parties to process anonymously at trial is one of many involving management of the trial process that for obvious reasons is committed in the first instance to trial court discretion." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). *See also Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (reviewing denial of anonymity application for abuse of discretion); *Doe v. Stegall*, 653 F.2d 180, 184 (5th Cir. 1981) (same). *Cf. Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2043, at 305 (1970)) ("[T]he most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed and the use to which these persons may put the information").

Courts that have considered applications by litigants to proceed anonymously have applied a balancing test that weighs the party's need for anonymity against prejudice to the defendant and the presumption of public openness. *See, e.g., Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (noting the four circuits to consider the applicable standard had held that "the district court must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party"). Under this test, "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing a party's identity." *Id.* at 1068. *See also*

*Frank*, 951 F.2d at 323 (test for permitting plaintiff to proceed anonymously is "whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally embedded presumption of openness in judicial proceedings.'") (quoting *Stegall*, 653 F.2d at 186).

Further, courts have generally considered three factors in determining whether to grant an anonymity application to shield the party from retaliation: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation. *Id.* at 1068 (citing cases). With respect to the second factor, whether the parties' fears are reasonable, parties "are not required to prove that the defendants intend to carry out the threatened retaliation." *Id.* at 1071.

Although the Court of Appeals has not specifically ruled on the standard that applies to anonymity applications, it has cited with approval the seminal cases that established the balancing test used in other circuits. *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463-64 (D.C. Cir. 1995) (citing *Stegall*, 653 F.2d 180; *Frank*, 951 F.2d 320; *James*, 6 F.3d 233). Further, the Court of Appeals and the Supreme Court have permitted plaintiffs to proceed anonymously without comment. *See, e.g., Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005) (citing *Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Sullivan*, 938 F.2d 1370 (D.C. Cir. 1991)).

### A. Plaintiffs' Use Of Pseudonyms In this Case Is Appropriate.

In the present case, Plaintiffs' use of pseudonyms is appropriate. In their Complaint, Plaintiffs allege that their family members are victims of egregious human rights abuses, including torture and murder, all of which were committed by A.U.C. paramilitary agents supported and financed by Defendants, and on banana plantations owned and operated by

Defendants. *See* Pls. Cmplt. at ¶¶ 2, 3. If their identities and addresses are disclosed publicly, there is no question based on the well-documented atrocities already committed by the A.U.C., and the A.U.C.'s well-known connection to Defendants' business interests, that Plaintiffs face imminent and virtually certain serious physical harm, and likely death, at the hands of Defendants' A.U.C. paramilitary agents. *See* Wolf Decl. at ¶¶ 3-5; 7-9. In light of these very real dangers, this case falls squarely within the confines of allowing parties to proceed anonymously.

Indeed, the threat of physical abuse is one of the paradigmatic cases in which courts have permitted plaintiffs to use pseudonyms. *See, e.g., James*, 6 F.3d at 238 (factor in considering anonymity requests is "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties"). Protective orders regarding identifying information have routinely been granted where the movant demonstrates risk of threats of physical harm and other forms of retaliation, *Stegall*, 653 F.2d at 186; *Stamicarbon v. Am. Cyanamid Co.*, 506 F.2d 532, 540 (2d Cir. 1974), along with the other, less severe risks that have also warranted protection, such as "annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c).

In *Advanced Textile*, the Ninth Circuit concluded that employees of garment manufacturers in Saipan who claimed they faced the threat that they would be deported from Saipan to China and that their families would face economic retaliation were entitled to proceed anonymously. 214 F.3d at 1069. In so holding, the court found "based on the extreme nature of the retaliation threatened against plaintiffs coupled with their highly vulnerable status, that plaintiffs reasonably fear severe retaliation, and that this fear outweighs the interests in favor of open judicial proceedings." *Id. See also* Jed Greer, "Plaintiff Pseudonymity and the Alien Tort

5

Claims Act: Questions and Challenges," 32 Colum. Hum. Rts. L. Rev. 517, 538-558 (2001) (discussing protective orders entered in *Doe I v. Islamic Salvation Front*, No. 96-02792-JR (D.D.C.) and the two companion "Unocal" cases, *Doe I v. Unocal Corp.* No. 96-6959-RAP (C.D. Cal.) and *Nat'l Coalition Gov't of the Union of Burma v. Unocal, Inc.*, No. 96-6112 RSLW BQR (C.D. Cal.), both of which limited disclosure of plaintiffs' identifying information to defendants). Here, the risks of harm faced by Plaintiffs are even more extreme and concrete given the involvement of the notorious terrorist organization in the Colombia, the A.U.C., and there is no question that Plaintiffs' safety far outweighs any possible privacy interest of the public.

### B. Defendants Will Not be Prejudiced by Plaintiffs' Use of Pseudonyms.

Finally, in requesting an order allowing them to proceed anonymously, Plaintiffs do not seek to preclude Defendants' counsel from learning their identities and addresses. Recognizing that the case involves numerous fact-specific issues, after commencing this action using pseudonyms, Plaintiffs will provide such disclosures to Defendants' counsel upon entering into an appropriate protective agreement and/or order in order to permit Defendants appropriate discovery while preventing public disclosure of their identities. Limiting disclosure to Defendants' counsel does not prejudice Defendants. Disclosure of sensitive information is routinely limited to an opposing party's attorneys, and protected from disclosure to the opposing party itself. *See Westside-Marrero Jeep Eagle, Inc., v. Chrysler Corp., Inc.*, Civ. A. No. 97-3012, 1998 WL 186728 (E.D. La. April 17, 1998) (citing cases). Further, although most cases limiting disclosure to attorneys involve trade secret or other proprietary information, a district court in this district held the same rationale for an attorneys-only restriction applied where the

party sought anonymity to prevent "harm similar to that specifically alleged in the complaint."

*Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 54, 58 (D.D.C. 1998).

### III. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order allowing them to commence and proceed with their action using pseudonyms.

Respectfully submitted on this 7th day of June, 2007 by:

*/s/ Terry Collingsworth*
Terry Collingsworth
D.C. Bar 471830
International Rights Advocates
2001 S Street NW #420
Washington, D.C. 20002
202-347-4100 ext 104
tc@iradvocates.org

*/s/ Paul Wolf*
Paul Wolf
D.C. Bar 480285
PO Box 11244
Washington, D.C. 20008-1244
Tel. (202) 674-9653

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOES 1-144,<br><br>Plaintiffs,<br><br>v.<br><br>CHIQUITA BRANDS, INTERNATIONAL, INC., and DAVID DOES 1-10,<br><br>Defendants. | Case No.:<br><br>CIVIL JURY TRIAL DEMANDED |

DECLARATION OF PAUL DAVID WOLF
IN SUPPORT OF PLAINTIFFS' *EX-PARTE* MOTION TO COMMENCE AND
PROCEED WITH ACTION USING PSEUDONYMS

1. My name is Paul David Wolf. Along with my co-counsel, Terry Collingsworth of International Rights Advocates, I represent the Plaintiffs in this action, who are all citizens of and reside in Colombia. I have personal knowledge of the following facts.

2. As part of our due diligence in filing Plaintiffs' Complaint, I personally interviewed Plaintiffs and conducted an investigation of the underlying facts and background concerning the matters raised in the Complaint that we propose to file with the Court. Specifically, I traveled to Colombia from April 24, 2007 through May 24, 2007, and personally met with each of the 144 Jane/John Doe plaintiffs in this case. Each plaintiff was asked who was responsible for the murder of their family member, and a 5 page questionnaire was used to compile data for each murder.

3. As explained in greater detail in Plaintiffs' Complaint, Plaintiffs' murdered relatives lived in the main banana-producing regions of Colombia, known as Uraba and Santa Marta. Both regions are not only at the center of Defendant Chiquita's business activities, but have long been a hotbed of discontent and armed conflict among various armed guerrilla organizations. Beginning in the mid 1990s, the Autodefensas Unidas de Colombia (United Self-Defense Forces of Colombia, a right wing paramilitary organization, hereinafter "A.U.C.") took control of the banana producing regions, and today maintain a reign of terror, killing persons suspected of sympathizing with opposing political factions. Indeed, in 2001 the U.S. State Department identified the A.U.C. as a terrorist organization, responsible for the murder of thousands of innocent persons.

4. Consequently, Plaintiffs are organized in secret societies as a means of protection and would only meet with me in secret. In some parts of Colombia, I was unable to meet with the victims' groups directly and only met with their representatives. Some of these people used pseudonyms and never told me their real names. One victims' advocate in Apartado had recently been shot in the stomach three times, and continues to receive death threats. In response, the Departamento Administrativo de Seguridad ("DAS", the Colombian secret police) assigned a plainclothes officer as her bodyguard. Also while I was there, the sister of a lawyer assisting me in this investigation, previously the human rights ombudsman ("defensor del pueblo" or "defender of the people") for Apartado received a death threat.

5. Many of the plaintiffs requested that their identities in this action be kept confidential because they fear similar reprisals and even death, and I promised to keep them confidential before I even spoke to anyone about their case. Legal actions brought by individuals living in the town of San Jose de Apartado (where Jane Does 1-17 live) have resulted only in the murders

of witnesses by the AUC. While I was in Colombia, a man was murdered in the town of San Jose de Apartado, presumably by the AUC. Peace Brigades International and other human rights groups assign people to this area to accompany controversial leaders so that they are not assassinated by the AUC. One plaintiff looked me right in the eyes when she signed the retainer agreement and told me point blank she would be killed if she were identified.

6.   A large proportion of the plaintiffs in this action have been displaced from their homes, and live in shanty towns. Although they are living in third world conditions, without electricity, running water or sanitation, they feel safer than if they lived in rural areas. Many of the plaintiffs believe that they are still being hunted by the AUC. I was told that these shanty towns are patrolled by the AUC at night, and that is when people disappear or are murdered. They are unable to return to their homes and live in hiding.

7.   Murders occurring in this region are not investigated by the Colombian police. The AUC controls, militarily and politically, the geographic area comprising the municipios of Apartado, Chigorodo and Turbo, where 142 of the 144 plaintiffs in this case live. I was questioned by AUC members while I was in the region. The Colombian military and police cannot or will not protect the people of this region from the AUC.

8.   The Colombian government has established a traveling court, called the Commission of Justice and Peace, which is currently in the Uraba region. In this court, members of the AUC may admit their crimes and lay down their arms in exchange for amnesty. The public has an opportunity to attend these proceedings and accuse the AUC members of crimes they have not admitted. In response, the AUC has organized its own unofficial "truth commission" in which victims of the FARC (its opposing armed left-wing guerrilla organization called the Fuerzas

Armadas Revolucionarias de Colombia [Revolutionary Armed Forces of Colombia]) can make public accusations against that organization. The AUC truth commission follows the government's Commission of Justice and Peace around. The question of who is a victim is therefore a highly controversial one.

9. Given these concerns, a person identified as a plaintiff in this lawsuit, the primary aim of which is to vindicate murders caused by Defendants' unlawful support of the AUC, would be at high risk of being murdered him or herself. Likewise, a person making a claim that the FARC murdered their family member would also be at risk. For these reasons, the plaintiffs in this case cannot be publicly identified.

FURTHER DECLARANT SAYETH NOT.

I, Paul Wolf, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct. Executed on June 6, 2007 in Washington, D.C.

/s/ *[signature]*
Paul Wolf
DC Bar # 480285
PO Box 11244
Washington, DC 20008-1244
(202) 674-9653

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE / JOHN DOES 1-144<br><br>Plaintiffs,<br><br>v.<br><br>CHIQUITA BRANDS INTERNATIONAL, INC. and DAVID DOES 1-10<br><br>Defendants. | Case No.:<br><br>CIVIL JURY TRIAL DEMANDED |

**PLAINTIFFS' [PROPOSED] ORDER
GRANTING USE OF PSEUDONYMS**

This matter is before the Court on Plaintiffs' *Ex-Parte* Motion to Commence and Proceed With Action Using Pseudonyms. Upon review of such motion and the accompanying Declaration of Paul David Wolf, *Esq.* and points and authority in support of such motion, it is hereby:

ORDERED, that such motion is GRANTED; and it is hereby further

ORDERED, that Plaintiffs may proceed with the commencement of this action using pseudonyms; and finally, it is further

ORDERED, that Plaintiffs shall disclose their names and addresses to the Defendants in this action only upon entry of an appropriate confidentiality agreement or order.

Dated:_____          _____
                                                                        U.S. District Court Judge