## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE / JOHN DOES 1-144 (as Legal Heirs) Colombia, South America <br><br> Plaintiffs, <br><br> v. <br><br> CHIQUITA BRANDS INTERNATIONAL, INC. 250 East Fifth Street Cincinnati, Ohio 45202 <br><br> and DAVID DOES 1-10 <br><br> Defendants. | Case No.: <br><br> CIVIL JURY TRIAL DEMANDED |

## COMPLAINT

### I. NATURE OF THE ACTION

1.      Plaintiffs Jane and John Does 1-144 (hereinafter Plaintiffs) are the legal heirs to Peter Does 1-144, all of whom were murdered by terrorist groups receiving material support from Defendants. Plaintiffs bring this action against Defendants Chiquita Brands International, Inc. (hereinafter "Chiquita") and David Does 1-10 (collectively referred to as "Defendants") for equitable relief and damages. At some of the times relevant herein, Chiquita's wholly-owned subsidiary, C. I. Bananos de Exportación, S.A. (also known as and referred to hereinafter as "Banadex"), was acting on behalf of Chiquita.

2.      This case involves the systematic intimidation and murder of individuals living in the banana growing regions near the Gulf of Uraba and the city of Santa Marta in Colombia, South America, at the hands of paramilitaries and other terrorist groups working as agents of Defendants. This case is brought under the Alien Tort Claims Act

(ATCA), Torture Victim Protection Act (TVPA) and state tort law, and seeks to remedy and prevent the violent persecution of persons living in the banana growing regions of Colombia. The Defendants were knowingly engaged in an ongoing campaign of terror against these individuals.

3. With respect to their business operations in Colombia, the Defendants have hired, armed, contracted with, or otherwise directed terrorist paramilitary security forces, for the most part members of the Autodefensas Unidas de Colombia (United Self-Defense Forces of Colombia, a right wing paramilitary organizations, hereinafter "A.U.C."), that utilized extreme violence and murdered, tortured unlawfully detained or otherwise silenced individuals believed to be interfering with Defendants' business operations in Colombia, or who had the misfortune of residing in the path of Defendants' paramilitary agents. These include persons suspected of sympathizing with leftist guerrillas active in the region, members of the Union Patriotica and Colombian Communist Party, union leaders, and others voicing opposition to the paramilitaries' strict control over these regions. These murders were extrajudicial killings in violation of the ATCA, the TVPA, international human rights law, and the common tort law of the District of Colombia. In some cases, Defendants also made payments to the Fuerzas Armadas Revolucionaries de Colombia (Revolutionary Armed Forces of Colombia, hereinafter "F.A.R.C."), the leftist group that has also been designated a terrorist organization by the Bush Administration.

4. Plaintiffs do not have access to an independent or functioning legal system within Colombia to raise their complaints. Any effort by Plaintiffs to seek legal redress would be futile because those seeking to challenge official or paramilitary violence, including prosecutors and prominent human rights activists, are at great risk from retaliation. This

has been well-documented in credible human rights reports by the U.S. Department of State, Human Rights Watch and Amnesty International. *See, e.g.,* The Ties that Bind: Colombia and Military-Paramilitary Links, Human Rights Watch (February, 2000).

5.      Further, various non-governmental organizations in Colombia, such as Justicia y Paz, have sought the assistance and protection of the Colombian government. No action was taken, and these complaints were futile because of the lack of an independent or functioning legal system within Colombia. The justice system in Colombia has utterly failed to bring the perpetrators of violence to justice under the laws of Colombia. Finally, even if there were remedies available to Plaintiffs in Colombia, such remedies are inadequate and would not afford the complete relief available to Plaintiffs by this Complaint. Defendants, because they do business in Colombia, are well aware of these conditions, and know that Plaintiffs do not have the option of seeking justice in Colombia for human rights violations. The fact that terrorist paramilitary groups operate openly and are financed by companies such as Chiquita indicates the level of impunity still existing in Colombia.

## II.  JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, based on the ATCA and the TVPA, 28 U.S.C. §1350, for the alleged violations of international human rights law.  Supplemental jurisdiction exists over the state law causes of action pursuant to 28 U.S.C. § 1367.

7.      This Court also has diversity jurisdiction pursuant to 28 U.S.C. 1332 (a)(2).  All Plaintiffs are citizens and domiciles of Colombia, and the Defendants are all United States domiciles with their principal place of business and/or residence also in the United

States.   The amount in dispute between each Plaintiff and each defendant exceeds $75,000.

8.       Defendant Chiquita Brands, International is a New Jersey Corporation with its principal place of business in Ohio. Defendants have a nation-wide business, with distribution networks all over the country. Defendants conduct significant business within the District of Colombia, and is currently facing criminal charges in the District of Colombia for the same conduct at issue in this case.

9.       Venue properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) and (c).

### III. PARTIES

#### Plaintiffs

10.      There are a total of 144 Jane (or John) Doe Plaintiffs in this case. They are the legal heirs of 173 Peter (or Pam) Does who were murdered by terrorist organizations receiving support from Chiquita and/or Banadex.  The Peter Does are given numbers corresponding to the numbers used for their heirs. Where a Jane Doe is heir to more than one Peter Doe, the additional Peter Does are given letter designations (such as Peter Doe 6-a), so that the numbers still correspond to the numbers used for their heirs.

11.      On 2/10/1997, Peter Doe 1 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 1, who was the son of Peter Doe 1,  is the legal heir to Peter Doe 1 and resides in the municipio of Apartado in Antioquia, Colombia.

12.      In 1997, Peter Doe 2 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 2, who was the son of Peter Doe 2, is the

legal heir to Peter Doe 2 and resides in the municipio of Apartado in Antioquia, Colombia.

13.     On 6/7/1997, Pam Doe 3 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 3, who was the father of Pam Doe 3,  is the legal heir to Pam Doe 3 and resides in the municipio of Apartado in Antioquia, Colombia.

14.     On 12/12/1997, Pam Doe 4 was disappeared by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 4, who was the daughter of Pam Doe 4,  is the legal heir to Pam Doe 4 and resides in the municipio of Apartado in Antioquia, Colombia.

15.     On 12/12/1997, Peter Doe 5 was disappeared by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 5, who was the father of Peter Doe 5, is the legal heir to Peter Doe 5 and resides in the municipio of Apartado in Antioquia, Colombia.

16.     On 7/25/2003, Peter Doe 6 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 6, who was the mother of Peter Doe 6,  is the legal heir to Peter Doe 6 and resides in the municipio of Apartado in Antioquia, Colombia.

17.     On 7/25/2003, Peter Doe 6-a was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 6, who was the mother of Peter Doe 6-a,  is the legal heir to Peter Doe 6-a and resides in the municipio of Apartado in Antioquia, Colombia.

18.     On 8/17/1997, Peter Doe 7 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 7, who was the wife of Peter Doe 7,  is the legal heir to Peter Doe 7 and resides in the municipio of Apartado in Antioquia, Colombia.

19.     On 2/14/1993, Peter Doe 7-a was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 7, who was the mother of Peter Doe 7-a,  is the legal heir to Peter Doe 7-a and resides in the municipio of Apartado in Antioquia, Colombia.

20.     On 6/19/1997, Peter Doe 8 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 8, who was the wife of Peter Doe 8,  is the legal heir to Peter Doe 8 and resides in the municipio of Apartado in Antioquia, Colombia.

21.     On 7/21/2002, Peter Doe 9 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 9, who was the sister of Peter Doe 9,  is the legal heir to Peter Doe 9 and resides in the municipio of Apartado in Antioquia, Colombia.

22.     On 3/30/2002, Pam Doe 10 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 10, who was the mother of Pam Doe 10,  is the legal heir to Pam Doe 10 and resides in the municipio of Apartado in Antioquia, Colombia.

23.     On 8/20/1997, Peter Doe 11 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 11, who was the mother of Peter Doe 11,  is

the legal heir to Peter Doe 11 and resides in the municipio of Apartado in Antioquia, Colombia.

24.     In 2000, Peter Doe 11-a was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 11, who was the mother of Peter Doe 11-a, is the legal heir to Peter Doe 11-a and resides in the municipio of Apartado in Antioquia, Colombia.

25.     In 2004, Peter Doe 11-b was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 11, who was the mother of Peter Doe 11-b, is the legal heir to Peter Doe 11-b and resides in the municipio of Apartado in Antioquia, Colombia.

26.     On 12/14/1999, Peter Doe 12 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 12, who was the wife of Peter Doe 12, is the legal heir to Peter Doe 12 and resides in the municipio of Apartado in Antioquia, Colombia.

27.     On 5/24/1975, Pam Doe 13 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 13, who was the mother of Pam Doe 13,  is the legal heir to Pam Doe 13 and resides in the municipio of Apartado in Antioquia, Colombia.

28.     On 4/24/1978, Pam Doe 13-a was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 13, who was the mother of Pam Doe 13-a,  is the legal heir to Pam Doe 13-a and resides in the municipio of Apartado in Antioquia, Colombia.

29.     On 1/1/1989, Peter Doe 13-b was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 13, who was the mother of Peter Doe 13-b, is the legal heir to Peter Doe 13-b and resides in the municipio of Apartado in Antioquia, Colombia.

30.     On 7/10/2000, Peter Doe 14 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 14, who was the mother of Peter Doe 14, is the legal heir to Peter Doe 14 and resides in the municipio of Apartado in Antioquia, Colombia.

31.     On 11/9/2003, Peter Doe 14-a was disappeared by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 14, who was the wife of Peter Doe 14-a, is the legal heir to Peter Doe 14-a and resides in the municipio of Apartado in Antioquia, Colombia.

32.     On 7/20/1997, Peter Doe 15 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 15, who was the wife of Peter Doe 15, is the legal heir to Peter Doe 15 and resides in the municipio of Apartado in Antioquia, Colombia.

33.     On 5/3/2002, Peter Doe 15-a was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 15, who was the mother of Peter Doe 15-a, is the legal heir to Peter Doe 15-a and resides in the municipio of Apartado in Antioquia, Colombia.

34.     On 5/3/2002, Peter Doe 15-b was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 15, who was the mother of Peter Doe

15-b,  is the legal heir to Peter Doe 15-b and resides in the municipio of Apartado in Antioquia, Colombia.

35.    On 9/5/2000, Peter Doe 16 was disappeared by paramilitaries, who received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 16, who was the wife of Peter Doe 16,  is the legal heir to Peter Doe 16 and resides in the municipio of Apartado in Antioquia, Colombia.

36.    On 10/5/2004, Pam Doe 16-a was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 16, who was the mother of Pam Doe 16-a,  is the legal heir to Pam Doe 16-a and resides in the municipio of Apartado in Antioquia, Colombia.

37.    On 1/16/1997, Peter Doe 17 was killed by paramilitaries, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 17, who was the sister of Peter Doe 17,  is the legal heir to Peter Doe 17 and resides in the municipio of Apartado in Antioquia, Colombia.

38.    On 7/10/1997, Peter Doe 18 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 18, who was the wife of Peter Doe 18,  is the legal heir to Peter Doe 18 and resides in the municipio of Apartado in Antioquia, Colombia.

39.    On 4/20/2002, Peter Doe 19 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 19, who was the father of Peter Doe 19,  is the legal heir to Peter Doe 19 and resides in the municipio of Apartado in Antioquia, Colombia.

40.     On 7/22/1997, Peter Doe 20 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 20, who was the mother of Peter Doe 20, is the legal heir to Peter Doe 20 and resides in the municipio of Apartado in Antioquia, Colombia.

41.     On 6/26/2001, Peter Doe 21 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 21, who was the wife of Peter Doe 21, is the legal heir to Peter Doe 21 and resides in the municipio of Apartado in Antioquia, Colombia.

42.     On 5/28/1997, Peter Doe 22 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 22, who was the wife of Peter Doe 22, is the legal heir to Peter Doe 22 and resides in the municipio of Apartado in Antioquia, Colombia.

43.     On 6/11/1999, Peter Doe 23 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 23, who was the mother of Peter Doe 23, is the legal heir to Peter Doe 23 and resides in the municipio of Apartado in Antioquia, Colombia.

44.     On 11/8/1997, Peter Doe 24 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 24, who was the wife of Peter Doe 24, is the legal heir to Peter Doe 24 and resides in the municipio of Apartado in Antioquia, Colombia.

45.     On 4/13/1997, Peter Doe 25 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 25, who was the mother of Peter Doe 25, is

the legal heir to Peter Doe 25 and resides in the municipio of Apartado in Antioquia, Colombia.

46.     On 1/22/2003, Peter Doe 26 was disappeared by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 26, who was the mother of Peter Doe 26,  is the legal heir to Peter Doe 26 and resides in the municipio of Apartado in Antioquia, Colombia.

47.     On 10/1/1996, Peter Doe 27 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 27, who was the mother of Peter Doe 27,  is the legal heir to Peter Doe 27 and resides in the municipio of Apartado in Antioquia, Colombia.

48.     On 10/19/1997, Peter Doe 28 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 28, who was the wife of Peter Doe 28, is the legal heir to Peter Doe 28 and resides in the municipio of Apartado in Antioquia, Colombia.

49.     On 5/31/1997, Peter Doe 29 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 29, who was the wife of Peter Doe 29,  is the legal heir to Peter Doe 29 and resides in the municipio of Apartado in Antioquia, Colombia.

50.     On 1/7/2000, Pam Doe 30 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 30, who was the daughter of Pam Doe 30, is the legal heir to Pam Doe 30 and resides in the municipio of Apartado in Antioquia, Colombia.

51.    On 10/12/1996, Peter Doe 31 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 31, who was the wife of Peter Doe 31, is the legal heir to Peter Doe 31 and resides in the municipio of Apartado in Antioquia, Colombia.

52.    On 9/14/1995, Peter Doe 32 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 32, who was the wife of Peter Doe 32, is the legal heir to Peter Doe 32 and resides in the municipio of Apartado in Antioquia, Colombia.

53.    On 10/2/2003, Peter Doe 33 was killed by paramilitaries, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 33, who was the wife of Peter Doe 33, is the legal heir to Peter Doe 33 and resides in the municipio of Apartado in Antioquia, Colombia.

54.    On 9/5/2004, Peter Doe 34 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 34, who was the wife of Peter Doe 34,  is the legal heir to Peter Doe 34 and resides in the municipio of Apartado in Antioquia, Colombia.

55.    On 3/4/2004, Peter Doe 35 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 35, who was the wife of Peter Doe 35,  is the legal heir to Peter Doe 35 and resides in the municipio of Apartado in Antioquia, Colombia.

56.    On 5/10/2001, Peter Doe 36 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 36, who was the wife of Peter Doe 36,  is

the legal heir to Peter Doe 36 and resides in the municipio of Apartado in Antioquia, Colombia.

57.    On 12/9/1993, Peter Doe 37 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 37, who was the wife of Peter Doe 37, is the legal heir to Peter Doe 37 and resides in the municipio of Apartado in Antioquia, Colombia.

58.    On 3/4/2002, Peter Doe 38 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 38, who was the wife of Peter Doe 38, is the legal heir to Peter Doe 38 and resides in the municipio of Apartado in Antioquia, Colombia.

59.    On 4/9/1997, Peter Doe 39 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 39, who was the wife of Peter Doe 39, is the legal heir to Peter Doe 39 and resides in the municipio of Apartado in Antioquia, Colombia.

60.    On 6/28/2001, Peter Doe 40 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 40, who was the mother of Peter Doe 40, is the legal heir to Peter Doe 40 and resides in the municipio of Apartado in Antioquia, Colombia.

61.    On 7/16/2002, Peter Doe 41 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 41, who was the wife of Peter Doe 41, is the legal heir to Peter Doe 41 and resides in the municipio of Apartado in Antioquia, Colombia.

62.    On 4/15/1997, Peter Doe 42 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 42, who was the wife of Peter Doe 42,  is the legal heir to Peter Doe 42 and resides in the municipio of Apartado in Antioquia, Colombia.

63.    On 3/25/1999, Peter Doe 43 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 43, who was the mother of Peter Doe 43,  is the legal heir to Peter Doe 43 and resides in the municipio of Apartado in Antioquia, Colombia.

64.    On 4/27/1999, Peter Doe 43-a was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 43, who was the mother of Peter Doe 43-a,  is the legal heir to Peter Doe 43-a and resides in the municipio of Apartado in Antioquia, Colombia.

65.    On 4/4/1998, Peter Doe 44 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 44, who was the wife of Peter Doe 44,  is the legal heir to Peter Doe 44 and resides in the municipio of Apartado in Antioquia, Colombia.

66.    On 2/23/2002, Peter Doe 45 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 45, who was the wife of Peter Doe 45,  is the legal heir to Peter Doe 45 and resides in the municipio of Apartado in Antioquia, Colombia.

67.    On 2/5/1993, Peter Doe 46 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 46, who was the wife of Peter Doe 46,  is

the legal heir to Peter Doe 46 and resides in the municipio of Apartado in Antioquia, Colombia.

68.    On 12/22/1998, Peter Doe 46-a was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 46, who was the sister of Peter Doe 46-a,  is the legal heir to Peter Doe 46-a and resides in the municipio of Apartado in Antioquia, Colombia.

69.    On 12/4/1997, Peter Doe 47 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 47, who was the wife of Peter Doe 47,  is the legal heir to Peter Doe 47 and resides in the municipio of Apartado in Antioquia, Colombia.

70.    On 8/29/1997, Peter Doe 48 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 48, who was the wife of Peter Doe 48,  is the legal heir to Peter Doe 48 and resides in the municipio of Apartado in Antioquia, Colombia.

71.    On 6/6/1997, Peter Doe 49 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 49, who was the wife of Peter Doe 49,  is the legal heir to Peter Doe 49 and resides in the municipio of Apartado in Antioquia, Colombia.

72.    On 3/10/2000, Peter Doe 50 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 50, who was the wife of Peter Doe 50,  is the legal heir to Peter Doe 50 and resides in the municipio of Apartado in Antioquia, Colombia.

73.     On 7/15/1997, Peter Doe 51 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 51, who was the wife of Peter Doe 51, is the legal heir to Peter Doe 51 and resides in the municipio of Apartado in Antioquia, Colombia.

74.     On 8/20/2000, Peter Doe 52 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 52, who was the wife of Peter Doe 52, is the legal heir to Peter Doe 52 and resides in the municipio of Apartado in Antioquia, Colombia.

75.     On 10/28/2002, Peter Doe 53 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 53, who was the wife of Peter Doe 53, is the legal heir to Peter Doe 53 and resides in the municipio of Apartado in Antioquia, Colombia.

76.     On 11/14/2000, Peter Doe 54 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 54, who was the wife of Peter Doe 54, is the legal heir to Peter Doe 54 and resides in the municipio of Apartado in Antioquia, Colombia.

77.     On 11/27/1997, Peter Doe 55 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 55, who was the wife of Peter Doe 55, is the legal heir to Peter Doe 55 and resides in the municipio of Apartado in Antioquia, Colombia.

78.     On 6/14/2000, Peter Doe 56 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 56, who was the wife of Peter Doe 56, is

the legal heir to Peter Doe 56 and resides in the municipio of Apartado in Antioquia, Colombia.

79.     On 2/22/1996, Peter Doe 57 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 57, who was the wife of Peter Doe 57,  is the legal heir to Peter Doe 57 and resides in the municipio of Apartado in Antioquia, Colombia.

80.     In 1987, Peter Doe 58 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 58, who was the brother of Peter Doe 58,  is the legal heir to Peter Doe 58 and resides in the municipio of Chigorodo in Antioquia, Colombia.

81.     In 1993, Pam Doe 58-a was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 58, who was the brother of Pam Doe 58-a, is the legal heir to Pam Doe 58-a and resides in the municipio of Chigorodo in Antioquia, Colombia.

82.     On 3/7/1997, Peter Doe 59 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 59, who was the wife of Peter Doe 59,  is the legal heir to Peter Doe 59 and resides in the municipio of Chigorodo in Antioquia, Colombia.

83.     On 5/28/1997, Peter Doe 60 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 60, who was the wife of Peter Doe 60,  is the legal heir to Peter Doe 60 and resides in the municipio of Chigorodo in Antioquia, Colombia.

84.     On 10/20/2000, Pam Doe 61 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 61, who was the wife of Pam Doe 61, is the legal heir to Pam Doe 61 and resides in the municipio of Chigorodo in Antioquia, Colombia.

85.     On 1/27/1991, Peter Doe 62 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff John Doe 62, who was the son of Peter Doe 62, is the legal heir to Peter Doe 62 and resides in the municipio of Chigorodo in Antioquia, Colombia.

86.     On 3/2/2001, Peter Doe 63 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 63, who was the wife of Peter Doe 63, is the legal heir to Peter Doe 63 and resides in the municipio of Chigorodo in Antioquia, Colombia.

87.     On 5/6/2001, Peter Doe 64 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 64, who was the wife of Peter Doe 64, is the legal heir to Peter Doe 64 and resides in the municipio of Chigorodo in Antioquia, Colombia.

88.     On 7/8/2000, Peter Doe 64-a was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 64, who was the mother of Peter Doe 64-a, is the legal heir to Peter Doe 64-a and resides in the municipio of Chigorodo in Antioquia, Colombia.

89.     On 7/29/1997, Peter Doe 65 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 65, who was the wife of Peter Doe 65, is

the legal heir to Peter Doe 65 and resides in the municipio of Chigorodo in Antioquia, Colombia.

90.     On 11/23/1999, Peter Doe 66 was killed by paramilitaries, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 66, who was the mother of Peter Doe 66,  is the legal heir to Peter Doe 66 and resides in the municipio of Chigorodo in Antioquia, Colombia.

91.     On 7/22/2002, Peter Doe 67 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 67, who was the wife of Peter Doe 67,  is the legal heir to Peter Doe 67 and resides in the municipio of Chigorodo in Antioquia, Colombia.

92.     On 4/12/2002, Peter Doe 68 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 68, who was the wife of Peter Doe 68,  is the legal heir to Peter Doe 68 and resides in the municipio of Chigorodo in Antioquia, Colombia.

93.     On 2/22/2001, Peter Doe 69 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 69, who was the wife of Peter Doe 69,  is the legal heir to Peter Doe 69 and resides in the municipio of Chigorodo in Antioquia, Colombia.

94.     On 11/28/2003, Peter Doe 70 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 70, who was the daughter of Peter Doe 70,  is the legal heir to Peter Doe 70 and resides in the municipio of Chigorodo in Antioquia, Colombia.

95.     On 9/18/2001, Peter Doe 71 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 71, who was the daughter of Peter Doe 71, is the legal heir to Peter Doe 71 and resides in the municipio of Chigorodo in Antioquia, Colombia.

96.     On 1/28/1993, Peter Doe 72 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 72, who was the wife of Peter Doe 72, is the legal heir to Peter Doe 72 and resides in the municipio of Chigorodo in Antioquia, Colombia.

97.     In 1994, Peter Doe 73 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 73, who was the wife of Peter Doe 73, is the legal heir to Peter Doe 73 and resides in the municipio of Chigorodo in Antioquia, Colombia.

98.     On 3/10/1994, Peter Doe 74 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 74, who was the wife of Peter Doe 74, is the legal heir to Peter Doe 74 and resides in the municipio of Chigorodo in Antioquia, Colombia.

99.     In 1992, Peter Doe 75 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 75, who was the wife of Peter Doe 75, is the legal heir to Peter Doe 75 and resides in the municipio of Chigorodo in Antioquia, Colombia.

100.     In 1991, Pam Doe 75-a was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 75, who was the mother of Pam Doe 75-a,

is the legal heir to Pam Doe 75-a and resides in the municipio of Chigorodo in Antioquia, Colombia.

101.     On 7/23/1997, Peter Doe 76 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 76, who was the wife of Peter Doe 76,  is the legal heir to Peter Doe 76 and resides in the municipio of Chigorodo in Antioquia, Colombia.

102.     On 8/7/1998, Peter Doe 77 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 77, who was the mother of Peter Doe 77,  is the legal heir to Peter Doe 77 and resides in the municipio of Chigorodo in Antioquia, Colombia.

103.     On 10/23/1999, Peter Doe 78 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 78, who was the wife of Peter Doe 78, is the legal heir to Peter Doe 78 and resides in the municipio of Chigorodo in Antioquia, Colombia.

104.     On 1/29/1993, Peter Doe 79 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 79, who was the wife of Peter Doe 79, is the legal heir to Peter Doe 79 and resides in the municipio of Chigorodo in Antioquia, Colombia.

105.     In 1990, Peter Doe 80 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 80, who was the wife of Peter Doe 80,  is the legal heir to Peter Doe 80 and resides in the municipio of Chigorodo in Antioquia, Colombia.

106.   In 1990, Peter Doe 80-a was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 80, who was the mother of Peter Doe 80-a, is the legal heir to Peter Doe 80-a and resides in the municipio of Chigorodo in Antioquia, Colombia.

107.   In 1992, Peter Doe 80-b was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 80, who was the mother of Peter Doe 80-b, is the legal heir to Peter Doe 80-b and resides in the municipio of Chigorodo in Antioquia, Colombia.

108.   On 8/3/1995, Peter Doe 81 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 81, who was the wife of Peter Doe 81,  is the legal heir to Peter Doe 81 and resides in the municipio of Chigorodo in Antioquia, Colombia.

109.   In 1994, Peter Doe 82 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 82, who was the sister of Peter Doe 82,  is the legal heir to Peter Doe 82 and resides in the municipio of Chigorodo in Antioquia, Colombia.

110.   On 4/4/1997, Peter Doe 83 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 83, who was the wife of Peter Doe 83,  is the legal heir to Peter Doe 83 and resides in the municipio of Chigorodo in Antioquia, Colombia.

111.   In 1999, Peter Doe 84 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 84, who was the wife of Peter Doe 84,  is

the legal heir to Peter Doe 84 and resides in the municipio of Chigorodo in Antioquia, Colombia.

112.    In 1991, Peter Doe 85 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 85, who was the wife of Peter Doe 85, is the legal heir to Peter Doe 85 and resides in the municipio of Chigorodo in Antioquia, Colombia.

113.    On 7/23/1996, Peter Doe 86 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 86, who was the wife of Peter Doe 86, is the legal heir to Peter Doe 86 and resides in the municipio of Chigorodo in Antioquia, Colombia.

114.    On 10/24/1990, Peter Doe 87 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 87, who was the wife of Peter Doe 87, is the legal heir to Peter Doe 87 and resides in the municipio of Chigorodo in Antioquia, Colombia.

115.    On 5/20/1991, Peter Doe 88 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff John Doe 88, who was the brother of Peter Doe 88, is the legal heir to Peter Doe 88 and resides in the municipio of Chigorodo in Antioquia, Colombia.

116.    On 7/10/1989, Peter Doe 88-a was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff John Doe 88, who was the brother of Peter Doe 88-a, is the legal heir to Peter Doe 88-a and resides in the municipio of Chigorodo in Antioquia, Colombia.

117.    In 1992, Peter Doe 89 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 89, who was the mother of Peter Doe 89, is the legal heir to Peter Doe 89 and resides in the municipio of Chigorodo in Antioquia, Colombia.

118.    In 1992, Peter Doe 89-a was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 89, who was the mother of Peter Doe 89-a, is the legal heir to Peter Doe 89-a and resides in the municipio of Chigorodo in Antioquia, Colombia.

119.    In 1989, Peter Doe 89-b was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 89, who was the mother of Peter Doe 89-b, is the legal heir to Peter Doe 89-b and resides in the municipio of Chigorodo in Antioquia, Colombia.

120.    On 3/7/1997, Peter Doe 90 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 90, who was the wife of Peter Doe 90, is the legal heir to Peter Doe 90 and resides in the municipio of Chigorodo in Antioquia, Colombia.

121.    In 2002, Peter Doe 91 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 91, who was the wife of Peter Doe 91, is the legal heir to Peter Doe 91 and resides in the municipio of Chigorodo in Antioquia, Colombia.

122.    On 4/6/1995, Peter Doe 92 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 92, who was the wife of Peter Doe 92, is

the legal heir to Peter Doe 92 and resides in the municipio of Chigorodo in Antioquia, Colombia.

123.    On 2/11/2001, Peter Doe 93 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 93, who was the wife of Peter Doe 93,  is the legal heir to Peter Doe 93 and resides in the municipio of Chigorodo in Antioquia, Colombia.

124.    On 4/20/1993, Peter Doe 94 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 94, who was the wife of Peter Doe 94, is the legal heir to Peter Doe 94 and resides in the municipio of Chigorodo in Antioquia, Colombia.

125.    On 12/10/1997, Peter Doe 95 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 95, who was the wife of Peter Doe 95, is the legal heir to Peter Doe 95 and resides in the municipio of Chigorodo in Antioquia, Colombia.

126.    On 7/22/1995, Peter Doe 96 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 96, who was the wife of Peter Doe 96, is the legal heir to Peter Doe 96 and resides in the municipio of Chigorodo in Antioquia, Colombia.

127.    On 7/23/2000, Peter Doe 97 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 97, who was the mother of Peter Doe 97,  is the legal heir to Peter Doe 97 and resides in the municipio of Chigorodo in Antioquia, Colombia.

128.   In 1995, Peter Doe 98 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 98, who was the wife of Peter Doe 98,  is the legal heir to Peter Doe 98 and resides in the municipio of Chigorodo in Antioquia, Colombia.

129.   In 1997, Peter Doe 98-a was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 98, who was the mother of Peter Doe 98-a, is the legal heir to Peter Doe 98-a and resides in the municipio of Chigorodo in Antioquia, Colombia.

130.   In 1991, Peter Doe 98-b was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 98, who was the mother of Peter Doe 98-b, is the legal heir to Peter Doe 98-b and resides in the municipio of Chigorodo in Antioquia, Colombia.

131.   On 8/11/1998, Peter Doe 99 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 99, who was the wife of Peter Doe 99,  is the legal heir to Peter Doe 99 and resides in the municipio of Chigorodo in Antioquia, Colombia.

132.   On 7/10/1997, Peter Doe 100 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 100, who was the wife of Peter Doe 100,  is the legal heir to Peter Doe 100 and resides in the municipio of Chigorodo in Antioquia, Colombia.

133.   On 9/24/1999, Peter Doe 101 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 101, who was the wife of Peter Doe

101, is the legal heir to Peter Doe 101 and resides in the municipio of Chigorodo in Antioquia, Colombia.

134.    On 8/27/1990, Peter Doe 102 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 102, who was the mother of Peter Doe 102, is the legal heir to Peter Doe 102 and resides in the municipio of Chigorodo in Antioquia, Colombia.

135.    On 2/11/1993, Peter Doe 103 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 103, who was the mother of Peter Doe 103, is the legal heir to Peter Doe 103 and resides in the municipio of Chigorodo in Antioquia, Colombia.

136.    On 6/2/1995, Peter Doe 104 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 104, who was the mother of Peter Doe 104, is the legal heir to Peter Doe 104 and resides in the municipio of Chigorodo in Antioquia, Colombia.

137.    On 9/18/1999, Peter Doe 105 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 105, who was the wife of Peter Doe 105, is the legal heir to Peter Doe 105 and resides in the municipio of Chigorodo in Antioquia, Colombia.

138.    On 7/10/1996, Peter Doe 106 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 106, who was the wife of Peter Doe 106, is the legal heir to Peter Doe 106 and resides in the municipio of Chigorodo in Antioquia, Colombia.

139.    In 1992, Peter Doe 107 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 107, who was the mother of Peter Doe 107, is the legal heir to Peter Doe 107 and resides in the municipio of Chigorodo in Antioquia, Colombia.

140.    In 1989, Peter Doe 108 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 108, who was the mother of Peter Doe 108, is the legal heir to Peter Doe 108 and resides in the municipio of Chigorodo in Antioquia, Colombia.

141.    In 1991, Peter Doe 108-a was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 108, who was the mother of Peter Doe 108-a, is the legal heir to Peter Doe 108-a and resides in the municipio of Chigorodo in Antioquia, Colombia.

142.    On 5/20/1998, Peter Doe 109 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 109, who was the wife of Peter Doe 109, is the legal heir to Peter Doe 109 and resides in the municipio of Chigorodo in Antioquia, Colombia.

143.    On 11/14/2000, Peter Doe 110 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 110, who was the wife of Peter Doe 110, is the legal heir to Peter Doe 110 and resides in the municipio of Turbo in Antioquia, Colombia.

144.    On 7/16/1997, Peter Doe 111 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 111, who was the daughter of Peter

Doe 111, is the legal heir to Peter Doe 111 and resides in the municipio of Turbo in Antioquia, Colombia.

145. On 6/28/1995, Peter Doe 112 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff John Doe 112, who was the brother of Peter Doe 112, is the legal heir to Peter Doe 112 and resides in the municipio of Turbo in Antioquia, Colombia.

146. On 2/6/2002, Peter Doe 113 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 113, who was the wife of Peter Doe 113, is the legal heir to Peter Doe 113 and resides in the municipio of Turbo in Antioquia, Colombia.

147. On 9/24/1996, Peter Doe 114 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 114, who was the wife of Peter Doe 114, is the legal heir to Peter Doe 114 and resides in the municipio of Turbo in Antioquia, Colombia.

148. On 12/10/1995, Peter Doe 115 was disappeared by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 115, who was the wife of Peter Doe 115, is the legal heir to Peter Doe 115 and resides in the municipio of Turbo in Antioquia, Colombia.

149. In 2002, Peter Doe 116 was killed by paramilitaries, who received support from Chiquita and/or Banadex. Plaintiff Jane Doe 116, who was the mother of Peter Doe 116, is the legal heir to Peter Doe 116 and resides in the municipio of Turbo in Antioquia, Colombia.

150.    In 2002, Peter Doe 116-a was killed by paramilitaries, who received support from Chiquita and/or Banadex. Plaintiff Jane Doe 116, who was the mother of Peter Doe 116-a, is the legal heir to Peter Doe 116-a and resides in the municipio of Turbo in Antioquia, Colombia.

151.    On 8/7/1993, Peter Doe 117 was killed by paramilitaries, who received support from Chiquita and/or Banadex. Plaintiff Jane Doe 117, who was the daughter of Peter Doe 117, is the legal heir to Peter Doe 117 and resides in the municipio of Turbo in Antioquia, Colombia.

152.    On 1/11/2001, Peter Doe 118 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 118, who was the wife of Peter Doe 118, is the legal heir to Peter Doe 118 and resides in the municipio of Turbo in Antioquia, Colombia.

153.    On 11/4/2003, Peter Doe 119 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 119, who was the wife of Peter Doe 119, is the legal heir to Peter Doe 119 and resides in the municipio of Turbo in Antioquia, Colombia.

154.    On 4/28/2002, Peter Doe 120 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 120, who was the daughter of Peter Doe 120, is the legal heir to Peter Doe 120 and resides in the municipio of Turbo in Antioquia, Colombia.

155.    On 8/1/1994, Peter Doe 121 was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 121, who was the wife of Peter Doe

121,  is the legal heir to Peter Doe 121 and resides in the municipio of Turbo in Antioquia, Colombia.

156.   On 10/3/2000, Peter Doe 122 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 122, who was the wife of Peter Doe 122,  is the legal heir to Peter Doe 122 and resides in the municipio of Turbo in Antioquia, Colombia.

157.   On 1/8/1987, Peter Doe 123 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 123, who was the son of Peter Doe 123,  is the legal heir to Peter Doe 123 and resides in the municipio of Turbo in Antioquia, Colombia.

158.   On 2/27/1997, Peter Doe 124 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 124, who was the mother of Peter Doe 124,  is the legal heir to Peter Doe 124 and resides in the municipio of Turbo in Antioquia, Colombia.

159.   On 2/28/1997, Pam Doe 124-a was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 124, who was the mother of Pam Doe 124-a,  is the legal heir to Pam Doe 124-a and resides in the municipio of Turbo in Antioquia, Colombia.

160.   In 1993, Peter Doe 125 was disappeared by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 125, who was the son of Peter Doe 125,  is the legal heir to Peter Doe 125 and resides in the municipio of Turbo in Antioquia, Colombia.

161.    On 11/6/2002, Peter Doe 126 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 126, who was the daughter of Peter Doe 126, is the legal heir to Peter Doe 126 and resides in the municipio of Turbo in Antioquia, Colombia.

162.    On 3/30/1996, Peter Doe 127 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 127, who was the wife of Peter Doe 127, is the legal heir to Peter Doe 127 and resides in the municipio of Turbo in Antioquia, Colombia.

163.    On 11/23/1997, Peter Doe 128 was disappeared by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 128, who was the wife of Peter Doe 128, is the legal heir to Peter Doe 128 and resides in the municipio of Turbo in Antioquia, Colombia.

164.    On 11/23/1997, Peter Doe 128-a was killed by the FARC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 128, who was the sister of Peter Doe 128-a, is the legal heir to Peter Doe 128-a and resides in the municipio of Turbo in Antioquia, Colombia.

165.    On 5/26/1994, Peter Doe 128-b was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 128, who was the sister of Peter Doe 128-b, is the legal heir to Peter Doe 128-b and resides in the municipio of Turbo in Antioquia, Colombia.

166.    On 12/9/1992, Peter Doe 129 was killed by the FARC, who received support from Chiquita and/or Banadex. Plaintiff Jane Doe 129, who was the daughter of Peter Doe

129,  is the legal heir to Peter Doe 129 and resides in the municipio of Turbo in Antioquia, Colombia.

167.    In October 1997, Peter Doe 130 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 130, who was the mother of Peter Doe 130,  is the legal heir to Peter Doe 130 and resides in the municipio of Turbo in Antioquia, Colombia.

168.    On 6/28/2004, Peter Doe 131 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 131, who was the mother of Peter Doe 131,  is the legal heir to Peter Doe 131 and resides in the municipio of Turbo in Antioquia, Colombia.

169.    On 3/15/1992, Peter Doe 132 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 132, who was the sister of Peter Doe 132,  is the legal heir to Peter Doe 132 and resides in the municipio of Turbo in Antioquia, Colombia.

170.    On 9/18/1995, Peter Doe 133 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 133, who was the wife of Peter Doe 133,  is the legal heir to Peter Doe 133 and resides in the municipio of Turbo in Antioquia, Colombia.

171.    On 8/2/1998, Peter Doe 134 was disappeared by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 134, who was the wife of Peter Doe 134,  is the legal heir to Peter Doe 134 and resides in the municipio of Turbo in Antioquia, Colombia.

172.    On 8/2/1987, Peter Doe 135 was killed by paramilitaries, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 135, who was the wife of Peter Doe 135,  is the legal heir to Peter Doe 135 and resides in the municipio of Turbo in Antioquia, Colombia.

173.    On 1/25/1997, Peter Doe 136 was disappeared by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 136, who was the wife of Peter Doe 136,  is the legal heir to Peter Doe 136 and resides in the municipio of Turbo in Antioquia, Colombia.

174.    On 12/31/1997, Peter Doe 137 was disappeared by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 137, who was the daughter of Peter Doe 137,  is the legal heir to Peter Doe 137 and resides in the municipio of Turbo in Antioquia, Colombia.

175.    On 5/23/1997, Peter Doe 138 was disappeared by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 138, who was the wife of Peter Doe 138,  is the legal heir to Peter Doe 138 and resides in the municipio of Turbo in Antioquia, Colombia.

176.    On 3/18/2003, Peter Doe 139 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 139, who was the wife of Peter Doe 139,  is the legal heir to Peter Doe 139 and resides in the municipio of Turbo in Antioquia, Colombia.

177.    On 12/1/1997, Peter Doe 140 was killed by the FARC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 140, who was the wife of Peter Doe

140, is the legal heir to Peter Doe 140 and resides in the municipio of Turbo in Antioquia, Colombia.

178.   On 6/9/1997, Peter Doe 141 was disappeared by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 141, who was the wife of Peter Doe 141, is the legal heir to Peter Doe 141 and resides in the municipio of Turbo in Antioquia, Colombia.

179.   On 8/14/2000, Pam Doe 142 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff Jane Doe 142, who was the mother of Pam Doe 142, is the legal heir to Pam Doe 142 and resides in the municipio of Turbo in Antioquia, Colombia.

180.   In 1996, Peter Doe 143 was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 143, who was the father of Peter Doe 143, is the legal heir to Peter Doe 143 and resides in the municipio of Medellin in Antioquia, Colombia.

181.   In 1995, Peter Doe 143-a was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 143, who was the father of Peter Doe 143-a, is the legal heir to Peter Doe 143-a and resides in the municipio of Medellin in Antioquia, Colombia.

182.   In 1999, Peter Doe 143-b was killed by the AUC, which received support from Chiquita and/or Banadex.  Plaintiff John Doe 143, who was the father of Peter Doe 143-b, is the legal heir to Peter Doe 143-b and resides in the municipio of Medellin in Antioquia, Colombia.

183.   On 6/22/2003, Peter Doe 144 was killed by the AUC, which received support from Chiquita and/or Banadex. Plaintiff Jane Doe 144, who was the mother of Peter Doe 144, is the legal heir to Peter Doe 144 and resides in the municipio of Medellin in Antioquia, Colombia.

### Defendants

184.   Defendant Chiquita is a multinational corporation, incorporated in New Jersey and headquartered in Cincinnati, Ohio. Defendant Chiquita engages in the business of producing, marketing, and distributing bananas and other fresh produce.  Defendant Chiquita is one of the largest banana producers in the world and a major supplier of bananas throughout Europe and North America, including within the District of Colombia.  Defendant Chiquita reported over $2.6 billion in revenue for calendar year 2003.

185.   Banadex was defendant Chiquita's wholly-owned subsidiary and alter ego in the Republic of Colombia. Banadex produced bananas in the Urabá (Antioquia department) and Santa Marta (Magdalena department) regions of Colombia. By 2003, Banadex was defendant Chiquita's most profitable banana-producing operation in the world.  In June of 2004, defendant Chiquita sold Banadex, in response to irrefutable evidence that it had been making payments, on behalf of Chiquita, to terrorist groups in Colombia.

186.   Although it no longer has a Colombian subsidiary, Chiquita remains one of the largest buyers of bananas in Colombia, purchasing bananas from Colombian companies at sea in the Gulf of Uraba and elsewhere.  Chiquita, and its predecessor the United Fruit Company, has had a presence in Colombia for more than one hundred years.

36

187.    David Doe 1 was a high-ranking officer of Defendant Chiquita, described as "Individual A" in Criminal Case 07-CR-0555 (RCL) in the United States District Court for the District of Columbia.

188.    David Doe 2 was a member of the board of directors of Defendant Chiquita, described as "Individual B" in Criminal Case 07-CR-0555 (RCL) in the United States District Court for the District of Columbia.

189.    David Doe 3 was a high-ranking officer of Defendant Chiquita, described as "Individual C" in Criminal Case 07-CR-0555 (RCL) in the United States District Court for the District of Columbia.

190.    David Doe 4 was a high-ranking officer of Defendant Chiquita, described as "Individual D" in Criminal Case 07-CR-0555 (RCL) in the United States District Court for the District of Columbia.

200.    David Doe 5 was a high-ranking officer of Defendant Chiquita, described as "Individual E" in Criminal Case 07-CR-0555 (RCL) in the United States District Court for the District of Columbia.

201.    David Doe 6 was a high-ranking officer of Banadex, described as "Individual F" in Criminal Case 07-CR-0555 (RCL) in the United States District Court for the District of Columbia.

202.    David Doe 7 was an employee of Banadex, described as "Individual G" in Criminal Case 07-CR-0555 (RCL) in the United States District Court for the District of Columbia.

37

203.    David Doe 8 was an employee of Defendant Chiquita, described as "Individual H" in Criminal Case 07-CR-0555 (RCL) in the United States District Court for the District of Columbia.

204.    David Doe 9 was an employee of Defendant Chiquita, described as "Individual I" in Criminal Case 07-CR-0555 (RCL) in the United States District Court for the District of Columbia.

205.    David Doe 10 was a high-ranking officer of Defendant Chiquita, described as "Individual J" in Criminal Case 07-CR-0555 (RCL) in the United States District Court for the District of Columbia.

## IV. BACKGROUND FACTS CONCERNING VIOLENCE IN THE BANANA GROWING REGIONS OF COLOMBIA.

### The Conflict in Uraba

206.    The main banana-producing region in Colombia, and the center of Defendant Chiquita's business activities, is on the eastern side of the Gulf of Uraba, on the north coast of Colombia near the border with Panama.  This region consists of four municipios (administrative regions akin to counties in the U.S.): Apartado, Turbo, Carepa, and Chigorodo. (hereinafter referred to simply as "Uraba")  The four muncipios are located in the department of Antioquia (an administrative region of Colombia akin to a U.S. state).

207.    Uraba has long been a hotbed of discontent and armed conflict.  Beginning in the mid-1980s, an armed left-wing guerrilla organization called the F.A.R.C. took military control of the Uraba region.  At the same time, the Union Patriotica (Patriotic Union, hereinafter "U.P."), a political party formed by demobilized F.A.R.C. guerrillas, won

38

elections throughout Uraba, taking control of key politial offices.  The Partido Comunista de Colombia (Communist Party of Colombia, hereinafter "P.C.C.") also had a strong presence in the region.

208.    In addition, another left-wing guerrilla group called the Ejercito Popular de Liberacion (Popular Army of Liberation, hereinafter "EPL") were rivals of the F.A.R.C. and fought against the F.A.R.C. for control.  After years of unsuccessfully battling the F.A.R.C. for control, in the early 1990s, the EPL allied with right-wing militias from the neighboring department of Cordoba, which came to Uraba to fight their common enemy, the F.A.R.C..

209.    From about 1994 through 1996, the A.U.C. drove the F.A.R.C. out of Uraba, killing thousands of people suspected of supporting the F.A.R.C. guerrillas, or their legal political party, the U.P.  From 1997 to today, the A.U.C. maintained a reign of terror in Uraba, killing anyone suspected of sympathizing with the F.A.R.C.  The inhabitants of Uraba have organized various political projects to demonstrate their neutrality (such as the "peace communities"), but are still caught in the crossfire.  During the week that the Plaintiffs signed retainer agreements for this case, a man was assassinated near San Jose de Apartado, and his murder was apparently not investigated.

210.    According to statistics provided by the Colombian National Police, between 1997 and 2004, over 2700 people were murdered in the four municipalities of Apartado, Chigorodo, Carepa and Turbo.  This figure does not include murders in the department of Magdelena, where Chiquita also had growing operations.  The vast majority of these murders were committed by the A.U.C.

211.    Chiquita's business boomed as the A.U.C. took over banana-growing lands and murdered thousands of people, including human rights workers, trade unionists, and members of the U.P.

212.    Tens of thousands of people have been displaced from their homes in Uraba by this conflict. Many of them live in "invasions" - slums constructed on public lands on the outskirts of Medellin, Cartagena, and elsewhere. The slum neighborhood of Policarpa in Apartado, where many of the Plaintiffs live, is another example of an invasion. These neighborhoods do not generally have water, sanitation, or electricity, and are located in areas where there are no employment opportunities. The displaced people choose to live there because they feel safer than if they lived in rural areas where they could be hunted down and killed by the A.U.C.

213.    Also in the late 1990s, the A.U.C. took control of the Sintrainagro banana workers union, and drove the competing Fensuago union from the region. The Fensuagro workers were suspected of having sympathy for the F.A.R.C. guerrillas. Today, the main union for the people supplying bananas to Defendant Chiquita is controlled by the A.U.C. through demobilized A.U.C. fighters in leadership roles in the Sintrainagro union.

214.    Chiquita also grew and bought bananas in five municipios in the department of Magdelena: Cordoba, Río Frio, Orihueca, Sevilla, Aracataca. These municipios are near to the city of Santa Marta, where Defendant Chiquita also made payments to the A.U.C. A similar level of violence has occurred in this region.

### The A.U.C.

215.    The A.U.C. is a violent, right-wing, paramilitary organization operating in the Republic of Colombia. The A.U.C. was formed on or about April 1997 to organize

loosely-affiliated illegal paramilitary groups that had emerged in Colombia to retaliate against left-wing guerrillas fighting the Colombian government. The A.U.C.'s activities include assassinating union leaders and suspected guerrilla supporters, drug trafficking, kidnapping, and indiscriminate murdering of civilians.

216.    Since September 10, 2001, the A.U.C. has been designated as a Foreign Terrorist Organization ("FTO") by the Secretary of State of the United States, making it a federal crime for any United States person to knowingly provide material support and resources, including currency and monetary instruments, to the A.U.C.  On October 31, 2001, the Secretary of State of the United States designated the A.U.C. as a Specially-Designated Global Terrorist ("SDGT"), making it a crime for any United States person to willfully engage in transactions with the A.U.C. without having first obtained a license or other authorization from the Office of Foreign Assets Control of the US Department of the Treasury.

217.    From 1997 to 2004, the A.U.C. murdered at least 10,000 people in Colombia, burying many of the bodies in mass graves.

218.    The U.S. State Department reported in 2003 that about 4,000 union members have been slain in Colombia in the past 20 years.  The vast majority of these murders were committed by right wing paramilitary forces, including the A.U.C.


## Chiquita's Dealings with the A.U.C.

219.    From at least 1997 through February 4, 2004, Defendant Chiquita, through Banadex, paid money to the A.U.C. in the two regions of Colombia where it had banana-growing operations: Uraba and Santa Marta.  Defendant Chiquita paid the A.U.C.,

directly or indirectly, nearly every month. From about 1997 through on or about February 4, 2004, defendant Chiquita made over 100 payments to the A.U.C. totaling over $1.7 million.

220. The amount of money paid to the A.U.C. was different every month. According to the testimony of A.U.C. commander Salvatore Mancuso in his criminal trial, the A.U.C. was paid a commission based on the number of boxes of bananas shipped by Defendant Chiquita each month. The A.U.C. was paid to ensure that Chiquita's business ran smoothly.

221. Chiquita's payments were made either through the Papagayo Association, a paramilitary group licensed by the Colombian government, and then transferred to the A.U.C., or directly to Carlos Castaño, the leader and founder of the A.U.C.

222. Carlos Castaño and other A.U.C. leaders co-mingled this money with other funds used to finance the A.U.C.'s activities throughout Colombia. The money provided by Chiquita financed the A.U.C. from its very first days in operation, making Chiquita one of the financial founders of the A.U.C.

223. Chiquita's payments to the A.U.C. were reviewed and approved by senior executives of the corporation, including high-ranking officers, directors and employees, described herein as David Does 1-10. Chiquita recorded these payments in its corporate books and records as "security payments."

224. According to the Colombian chief federal prosecutor's office, in November of 2001, a Banadex ship was used to smuggle more than 3,000 AK-47 assault rifles and more than 2.5 million bullets intended for the A.U.C. This shipment is also described in a 2003 report by the Organization of American States.

42

225.   Giovanny Hurtado Torres, Banadex's legal representative, is one of four people convicted in Colombia over the arms-smuggling scheme.

226.   Chiquita made these payments and shipped these weapons to the A.U.C. with knowledge of the A.U.C.'s activities, and against the advice of its own legal counsel. According to notes taken by Chiquita's counsel, on or about April 4, 2003, David Doe 3 said "His and [David Doe 2's] opinion is just let them sue us, come after us. This is also [David Doe 1's] opinion."

227.   Prior to the creation of the A.U.C. in 1997, Chiquita had paid money to other terrorist organizations operating in Colombia, which also murdered thousands of people.


## VI.  DEFENDANTS' VIOLATIONS OF LAW

228.   Defendants' actions violate, and Plaintiffs' causes of action arise from, the following laws, agreements, conventions, resolutions and treaties, which constitute specific examples of the applicable law of nations or customary international law:

   (a)   Alien Tort Claims Act, 28 U.S.C. § 1350;

   (b)   Torture Victim Protection Act, 28 U.S.C. § 1350;

   (c)   Common law of the United States of America;

   (d)   United Nations Charter, 59 Stat. 1031, 3 Bevans 1153 (1945);

   (e)   Universal Declaration of Human Rights, G.A. Res. 217A(iii), U.N. Doc. A/810 (1948);

   (f)   International Covenant on Civil and Political Rights, G.A. Res. 2220A(xxi), 21 U.N. Doc., GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966);

(g)     Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. res. 39/46, 39 U.N. Doc., GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51 (1984)(ratified 10/28/98);

(h)     Declaration on the Protection of All Persons From Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452, 30 U.N. Doc., GAOR Supp. (No. 34) at 91, U.N. Doc. A/10034 (1976);

(i)     Vienna Declaration and Programme of Action (World Conference on Human Rights, 1993);

(j)     International Labor Organization Conventions 87 and 98, which protect the fundamental rights to associate and organize;

(k)     Article 3 of the Geneva Conventions; and

(l)     Statutes and common law of the District of Columbia, including but not limited to, wrongful death, negligence, and recklessness.

## VII.  CAUSES OF ACTION

229.    Defendants had effective control of the areas where they grew bananas in the regions near the Gulf of Uraba and the city of Santa Marta. Defendants have pled guilty in the pending criminal case, 07-CR-0555 (RCL), of providing material assistance to terrorist groups operating in and around their banana plantations in Colombia. This assistance included cash payments and arms. Defendants accordingly were aiding and abetting all acts of violence committed with the material support provided by Defendants to the terrorist groups they supported.

230.    In committing the tortious conduct alleged herein, the terrorist groups accepting material assistance from Defendants were acting under the supervision of Defendants

and/or as Defendants' agents, and/or were acting within the course and scope of the security duties for which they were retained with the advance knowledge, acquiescence or subsequent ratification of Defendants.

231.    Defendants had reason to know and/or did know the nature and scope of the tortious conduct alleged herein, as well as tortious conduct carried out through the use of and benefit from the funding, equipment and other resources provided by Defendants. With this knowledge or probable knowledge, Defendants provided and continue to provide this funding, equipment and other resources to the terrorist groups responsible for the damages alleged herein.

232.    The tortious conduct alleged herein carried out by the terrorist groups receiving material assistance from Defendants was reasonably foreseeable.  Defendants failed to exercise due care in preventing this tortious conduct. Defendants and/or their predecessors acquiesced to tortious conduct, as alleged herein, carried out by the terrorist groups receiving material support from Defendants.

233.    With respect to all of the causes of action described below, the harm to Plaintiffs was caused by the commissions or omissions of Defendants, including Defendants' provision of material support to terrorist groups.

## First Cause of Action

### The Alien Tort Claims Act, 28 U.S.C. § 1350 for Extrajudicial Killing on Behalf of All Plaintiffs Against All Defendants.

234.    Plaintiffs incorporate by reference paragraphs 1 through 233 of this Complaint as is set forth herein.

235.    Defendants Chiquita and David Does 1-10 engaged in acts omissions of intentionally and tortiously causing their agents to murder Peter Does 1-144. Specifically, as is alleged above, the Defendant companies' employees and/or agents engaged in joint action with, and/or conspired with, paramilitary forces that were operating under color of law, and, so acting, murdered Peter Does 1-144.   Further, through their agents, Defendants knowingly aided and abetted the paramilitary forces that murdered Peter Does 1-144 by providing financial support, arms, and other substantial assistance that contributed to the ability of paramilitary forces to murder Peter Does 1-144.   Defendants were aware of the relationship between Chiquita Brands, International, Banadex and the A.U.C. and other terrorist organizations, and the threats posed by them. However, while having the requisite control to do so, Defendants failed to do anything to cease this relationship or to otherwise protect the lives of Peter Does 1-144.   Defendants realized substantial benefits from the murders of Peter Does 1-144, including the elimination of suspected guerrilla sympathizers, communists, and union leaders. These acts violate the law of nations, customary international law, and worldwide industry standards and practices, including, but not limited to, the specific laws, agreements, conventions, resolutions and treaties listed in paragraph 228, supra.   The acts described herein are actionable under the ATCA, and, if such a showing is required, were done with the complicity of state actors. The paramilitary security forces are permitted to exist, openly operate under the laws of Colombia, and are assisted by government military officials. In engaging in joint action and/or a conspiracy with such paramilitary agents or other state government officials, Defendants acted under color of law in violating each of the applicable laws, agreements, conventions, resolutions and treaties listed in paragraph

228, supra. Further, the Government of Colombia fails to enforce its laws that would prevent or remedy the violations alleged herein. Finally, as the murders were committed in the course of a civil conflict, and the victims were innocent civilians, these were also war crimes.

236. Defendants' conduct in violation of the law of nations, customary international law, and worldwide industry standards and practices, including, but not limited to, the specific laws, agreements, conventions, resolutions and treaties listed in paragraph 228, supra, resulted in the deaths of Peter Does 1-144. Defendants are jointly and severally liable for the acts of any and all subsidiaries that are in violation of the law of nations, customary international law, and worldwide industry standards and practices, including, but not limited to, the specific laws, agreements, conventions, resolutions and treaties listed in paragraph 228, supra. Defendants are also vicariously liable for any violations of their employees or agents of the law of nations, customary international law, and worldwide industry standards and practices, including, but not limited to, the specific laws, agreements, conventions, resolutions and treaties listed in paragraph 228, supra. Plaintiffs seek compensatory and punitive damages in amounts to be ascertained at trial. They further seek equitable relief to prevent further human rights violations.

## Second Cause of Action

### The Torture Victim Protection Act, 28 U.S.C. § 1350 For Extrajudicial Killing on Behalf of All Plaintiffs Against All Defendants.

237. Plaintiffs incorporate by reference paragraphs 1 through 236 of this Complaint as is set forth herein.

238. Defendants Chiquita and David Does 1-10 and engaged in acts and omissions of intentionally and tortiously causing their employees and/or agents to murder Peter Does

1-144. Specifically, as is alleged above, the Defendants' employees and/or agents engaged in joint action with, and/or conspired with, paramilitary forces that were operating under color of law, and, so acting, murdered Peter Does 1-144 in violation of the TVPA. Further, through their employees and/or agents, the Defendants knowingly aided and abetted the paramilitary forces that murdered Peter Does 1-144 by providing financial support, arms, and other substantial assistance that contributed to the ability of the paramilitary forces to murder Peter Does 1-144. Defendants were aware of the relationship between Chiquita Brands, International, its subsidiary Banadex and the paramilitaries and the threats posed by the paramilitaries to the people of the banana growing regions in Uraba and Santa Marta, including Peter Does 1-144. However, while having the requisite control to do so, they recklessly failed to do anything to cease this relationship or to otherwise protect the lives of Peter Does 1-144. Defendants realized substantial benefits from the murders of Peter Does 1-144, including the elimination of suspected guerrilla sympathizers, communists, and union leaders. These acts violate the law of nations, customary international law, and worldwide industry standards and practices, including, but not limited to, the specific laws, agreements, conventions, resolutions and treaties listed in paragraph 228, supra. The acts described herein are actionable under the TVPA, and, if such a showing is required, were done with the complicity of state actors. The paramilitary security force are permitted to exist, openly operate under the laws of Colombia, and are assisted by government military officials. In engaging in joint action and/or a conspiracy with such paramilitary agents or other state government officials, Defendants acted under color of law in violating each of the applicable laws, agreements, conventions, resolutions and treaties listed in paragraph

228, supra.  Further, the Government of Colombia fails to enforce its laws that would prevent or remedy the violations alleged herein.

239.    Defendants' conduct in violation of the law of nations, customary international law, and worldwide industry standards and practices, including, but not limited to, the specific laws, agreements, conventions, resolutions and treaties listed in paragraph 228, supra, resulted in the deaths of Peter Does 1-144.  Defendants are jointly and severally liable for the acts of any and all subsidiaries that are in violation of the law of nations, customary international law, and worldwide industry standards and practices, including, but not limited to, the specific laws, agreements, conventions, resolutions and treaties listed in paragraph 228, supra. Defendants are also vicariously liable for any violations of their employees or agents of the law of nations, customary international law, and worldwide industry standards and practices, including, but not limited to, the specific laws, agreements, conventions, resolutions and treaties listed in paragraph 228, supra. Plaintiffs seek compensatory and punitive damages in amounts to be ascertained at trial. They further seek equitable relief to prevent further human rights violations.


## Third Cause of Action

### Wrongful Death, on Behalf of All Plaintiffs Against All Defendants.

240.    Plaintiffs incorporate by reference paragraphs 1 through 239 of this Complaint as is set forth herein.

241.    Defendants Chiquita and David Does 1-10 committed, or acted in concert to commit, or Defendants' employees or agents, committed acts that constitute wrongful death under the laws of the District of Colombia, the laws of the United States and the

49

laws of Colombia, and that caused the deaths of Peter Does 1-144. Defendants Chiquita Brands, International and David Does 1-10 were aware of the relationship between the Chiquita Brands, International and the paramilitaries and the threats posed by the paramilitaries to the people of the Uraba and Santa Marta regions of Colombia, including, Peter Does 1-144. However, while having the requisite control to do so, they recklessly failed to do anything to cease this relationship or to otherwise protect the lives of Peter Does 1-144. Plaintiffs are the heirs at law herein. Plaintiffs seek damages herein for pecuniary loss resulting from loss of society, comfort, attention, services and support.

242.   Defendants' actions and omissions were a direct and substantial cause of the deaths of Peter Does 1-144. Defendants failed to use due care to protect them from injury and harm, thereby proximately causing their wrongful deaths.   Plaintiffs are entitled to recover compensatory and punitive damages in amounts to be ascertained at trial.

### Fourth Cause of Action

### Negligence, on Behalf of
### All Plaintiffs Against All Defendants.

243.   Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth herein.

244.   Defendants had a duty of reasonable care towards Plaintiffs to ensure that neither they nor their agents engaged in conduct leading to or likely to lead to foreseeable harm, injury or death, as described herein. Defendants failed to use due care to protect the Plaintiffs from foreseeable injury, harm, and death.

50

245.   Defendants had a duty to Plaintiffs to take ordinary care to ensure that the terrorist groups supported by Defendants were not unfit, incompetent or otherwise dangerous to Plaintiffs.

246.   At all relevant times, Defendants and/or their agents, had the power, ability, authority and duty to stop engaging in the conduct described herein and to intervene to prevent or prohibit such conduct.

247.   Defendants and/or their agents breached the duty of care that they owed Plaintiffs. In engaging in the conduct alleged herein, including the provision of material support to terrorist groups, Defendants and/or their agents have not acted as ordinarily prudent and careful persons would act in similar circumstances.

248.   Defendants and/or their agents' breached of the duty of care that they owed Plaintiffs is the proximate cause of Plaintiffs' damages, as alleged herein.

### Fifth Cause of Action

### Negligent Hiring, on Behalf of
### All Plaintiffs Against All Defendants.

249.   Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth herein.

250.   Defendants and/or their agents selected, hired, retained and/or contracted with terrorist groups operating in and around their banana-growing areas in Colombia.

251.   Defendants had a duty to Plaintiffs to take reasonable care to ensure that these terrorist groups were not unfit, incompetent or otherwise dangerous to Plaintiffs.

252.   Despite actual or constructive knowledge of the violent characteristics of these groups, Defendants hired, retained, and/or contracted with terrorist groups operating in

and around their banana-growing areas in Colombia. At the time that Defendants selected, hired, retained and/or contracted with these terrorist groups, and at all other relevant times, Defendants knew or reasonably should have known that these terrorist groups were unfit, incompetent, and/or dangerous, and that, as a result, would intentionally and/or negligently violate, did violate and would continue to harm Plaintiffs, as alleged herein.

253.   Defendants failed to exercise reasonable care in selecting, hiring, retaining and contracting for the security personnel whom Defendants and/or their agents retained to perform this work. Defendants breached their duty to Plaintiffs, who suffered harm and injury, including harm and injury caused by resources, property, funding and/or equipment under Defendants' control.

254.   As a direct and proximate result of those violations, Plaintiffs would and did suffer injuries as further alleged herein.

255.   As a direct and proximate result of Defendants' negligent selection, hiring, retention and/or contracting with terrorist groups, Plaintiffs have suffered and continue to suffer injuries entitling them to damages in amounts to be proven at trial.

256.   Defendants' conduct constitutes negligent hiring and is actionable under the laws of the District of Columbia.


### Sixth Cause of Action

**Negligent Supervision, on Behalf of
All Plaintiffs Against All Defendants.**

257.   Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth herein.

258.   When engaging in the wrongful conduct alleged herein, the terrorist groups receiving material assistance from Defendants were acting as agents of Defendants.

259.   Defendants had a duty to Plaintiffs to take reasonable care to ensure that the terrorist groups Defendants provided material support to were not unfit, incompetent or otherwise dangerous to Plaintiffs.

260.   By providing material support to terrorist groups, Defendants exercised control over the operative details of the actions taken by these groups, including control over the resources, property, funding and/or equipment used to injure and harm Plaintiffs.

261.   Defendants also had the authority to supervise, prohibit, control, and/or regulate the terrorist groups receiving material support from them so as to prevent these acts and omissions from occurring.  Defendants also had the ability to suspend material support to the terrorist groups until such time as the tortious conduct alleged herein were stopped and/or prevented.

262.   Defendants knew, or reasonably should have known, that the terrorist groups they were providing material support to would create a risk of harm and actually harm or otherwise violate Plaintiffs' rights, and that, as a direct and proximate result of those violations, Plaintiffs would suffer injuries as alleged herein.

263.   Defendants knew, or reasonably should have known, that unless they intervened to protect Plaintiffs and properly supervise, prohibit, control and/or regulate the conduct described herein, the terrorists receiving material support from Defendants would perceive their acts and omissions as being ratified and condoned.

264.   Defendants failed to exercise due care by failing to supervise, prohibit, control or regulate the terrorist groups they were supporting.  Defendants breached their duty to

Plaintiffs, who suffered harm and injury, including harm and injury caused by resources, property, funding and/or equipment under Defendants' control.

265.    As a direct and proximate result of Defendants' negligent supervision of the terrorist groups they supported, Plaintiffs have suffered and continue to suffer injuries entitling them to damages in amounts to be proven at trial.

266.    Defendants' conduct constitutes negligent supervision and is actionable under the laws of the District of Columbia.

### Seventh Cause of Action

#### Intentional Infliction of Emotional Distress, on Behalf of
#### All Plaintiffs Against All Defendants.

267.    Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth herein.

268.    Defendants and/or their agents intentionally committed outrageous and extreme acts, as alleged herein, including the murder, assault, and battery of Plaintiffs immediate family members, carried out by the terrorist groups receiving material support from Defendants.  These acts, which are without privilege, were intended to cause and did cause Plaintiffs to suffer severe emotional distress.

269.    In the alternative, Defendants engaged in outrageous and extreme acts with reckless disregard for the probability of causing Plaintiffs severe emotional distress and did in fact cause Plaintiffs to suffer severe emotional distress.

270.    Defendants' outrageous and extreme conduct constitutes the intentional and/or reckless infliction of emotional distress and is actionable under the laws of the District of Columbia.

## Eighth Cause of Action

### Battery, on Behalf of
### All Plaintiffs Against All Defendants.

271.    Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth herein.

272.    Defendants and/or their agents committed intentional knowing, and/or reckless acts which resulted in harmful or offensive contact with the bodies of Plaintiffs.

273.    Plaintiffs did not consent to the contact. Defendants acted with the intent to cause injury and actually did cause injury, damage, loss and harm to Plaintiffs as alleged herein.

274.    The acts described herein constitute battery, actionable under the laws of the laws of the District of Columbia.

## Ninth Cause of Action

### Assault, on Behalf of
### All Plaintiffs Against All Defendants.

275.    Plaintiffs incorporate by reference all of the preceding paragraphs as if set forth herein.

276.    Defendants and/or their agents intentionally, knowingly and/or recklessly committed or attempted and/or threatened to commit wrongful acts intending to cause harmful or offensive contact with Plaintiffs.   Defendants and/or their agents caused Plaintiffs to imminently fear and/or apprehend such harmful, offensive and/or unlawful contact. Defendants acted with the intent to threaten and harm and did actually threaten and harm Plaintiffs.

277.   Defendants' commissions and omissions, as alleged herein, demonstrated that Defendants had an imminent ability and intent to subject Plaintiffs to an intentional, offensive and harmful contact. Defendants knew or should have known that Plaintiffs would regard such intentional and harmful contact as offensive.

278.   Plaintiffs did not consent to such conduct, which caused injury, damage, loss and harm to Plaintiffs. The acts described herein constitute assault, actionable under the laws of the District of Columbia.

## VIII. DEMAND FOR JURY TRIAL

279.   Plaintiffs demand a trial by jury on all issues so triable.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to:

(a)   enter judgment in favor of Plaintiffs on all counts of the Complaint;

(b)   declare that Defendants have violated Plaintiffs' human rights and the laws of the District of Columbia and the United States, as set forth herein;

(c)   award Plaintiffs compensatory and punitive damages;

(d)   grant Plaintiffs equitable relief, permanently enjoining Defendants from further engaging in human rights abuses against Plaintiffs and other inhabitants of the Uraba and Santa Marta regions of Colombia;

(e)   award Plaintiffs the costs of suit including reasonable attorneys' fees;

(f)   award Plaintiffs such other and further relief as the Court deems just under the circumstances.

Respectfully submitted this seventh day of June, 2007,

Terry Collingsworth
International Rights Advocates
D.C. Bar 471830
2001 S Street NW #420
Washington, D.C. 20002
202-347-4100 ext 104
tc@iradvocates.org

Paul Wolf
D.C. Bar 480285
PO Box 11244
Washington, D.C. 20008-1244
Tel. (202) 674-9653
paulwolf@icdc.com