UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
JANE / JOHN DOES 1-144,                     )
                                            )
      Plaintiffs,                     )
                                            )
      v.                              )    Civil Action No. 07-1048 (PLF)
                                            )
CHIQUITA BRANDS INTERNATIONAL, INC.         )
and DAVID DOES 1-10,                        )
                                            )
      Defendants.                     )
_____)

OPINION

This matter is before the Court on plaintiffs' motion to transfer pursuant to 28 U.S.C. § 1631 [Dkt. No. 38]. Upon consideration of the parties' briefs, the relevant legal authorities, and the entire record in this case, the Court will grant plaintiffs' motion.[1] The Court concludes that it lacks personal jurisdiction over defendants Fernando Aguirre, Cyrus Freidheim, Charles Keiser, Robert Kistinger, Robert Olson, William Tsacalis, and Steven Warshaw (collectively, the "individual defendants"). The Court further finds that the interest of justice will be served by transferring the claims against defendants Aguirre, Kistinger, Olson, and Tsacalis to the United States District Court for the Southern District of Ohio, and transferring the claims against defendants Freidheim and Keiser to the United States District Court for the Southern District of Florida. In addition, the Court will dismiss the claims against Mr. Warshaw.

---

[1] The papers considered in connection with the pending motion include: plaintiffs' memorandum in support of their motion to transfer ("Mot.") [Dkt. No. 38]; the declaration of Terrence P. Collingsworth ("Collingsworth Decl.") [Dkt. No. 38-1]; the individual defendants' memorandum in opposition to plaintiffs' motion to transfer ("Opp.") [Dkt. No. 41]; and plaintiffs' reply memorandum in support of their motion to transfer ("Reply") [Dkt. No. 42].

I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of allegations that defendant Chiquita Brands International, Inc. ("Chiquita") provided financial support to a violent paramilitary group in Colombia accused of murdering, torturing, and terrorizing plaintiffs and their families. See In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Derivative Litig. (hereinafter "In re Chiquita"), 190 F. Supp. 3d 1100, 1104 (S.D. Fla. 2016). Between 1995 and 2004, Chiquita allegedly paid over $1.7 million to the Autodefensas Unidas de Colombia (the "AUC") and permitted the AUC to smuggle drugs and guns through its ports and on its vessels. See id.; Mot. at 3. The individual defendants, who are former executives of Chiquita, allegedly approved of this arrangement and actively concealed it. Id.

The lengthy procedural history of this case is set forth in In re Chiquita and will be summarized here only as relevant. Plaintiffs filed this action against Chiquita and ten unnamed "David Doe" defendants in this Court in 2007. See June 7, 2007 Complaint [Dkt. No. 3]. Plaintiffs asserted claims under the Alien Tort Statute (the "ATS"), 28 U.S.C. § 1350; the Torture Victim Protection Act (the "TVPA"), 28 U.S.C. § 1350 note; the common law of the District of Columbia; and Colombian tort law. Id. In 2008, the case was transferred by the Judicial Panel on Multidistrict Litigation (the "JPML") for consolidated pretrial proceedings to the Honorable Kenneth A. Marra in the United States District Court for the Southern District of Florida pursuant to the multidistrict litigation statute, 28 U.S.C. § 1407. See February 20, 2008 Transfer Order [Dkt. No. 20].

In June 2011, Judge Marra denied in relevant part Chiquita's motion to dismiss on the ground that plaintiffs had failed to adequately plead ATS and TVPA claims against Chiquita. See In re Chiquita, 190 F. Supp. 3d at 1105. The Eleventh Circuit granted Chiquita's petition for

interlocutory review in September 2012, and Judge Marra stayed the proceedings pending interlocutory review. See November 9, 2012 Order, No. 08-md-1916 (S.D. Fla.) (hereinafter "MDL Dkt.") [MDL Dkt. No. 587]. While the petition was pending, the Supreme Court decided Mohamad v. Palestinian Authority, 566 U.S. 449 (2012), holding that individuals but not corporations may be held liable under the TVPA. Concerned that their TVPA claims against Chiquita were no longer viable, plaintiffs amended their complaint in September 2012 to name the individual defendants and assert TVPA and Colombian law claims against them. See September 24, 2012 Third Amended Complaint [MDL Dkt. No. 575].[2]

In July 2014, the Eleventh Circuit reversed in part and remanded for dismissal of plaintiffs' ATS and TVPA claims against Chiquita. Cardona v. Chiquita Brands Int'l, Inc., 760 F.3d 1185 (11th Cir. 2014). Following that decision, the only claims remaining against Chiquita were claims under Colombian law, while claims under both the TVPA and Colombian law remained against the individual defendants. See In re Chiquita, 190 F. Supp. 3d at 1106.

In June 2016, Judge Marra denied in relevant part the individual defendants' motion to dismiss for, inter alia, failure to state a claim and lack of personal jurisdiction. See In re Chiquita, 190 F. Supp. 3d at 1124-25. As to the merits, Judge Marra found that plaintiffs had adequately pled TVPA claims and Colombian law claims against the individual defendants. Id. at 1113-21, 1123-24. As to personal jurisdiction, Judge Marra held that the District of Columbia lacked personal jurisdiction over defendants Aguirre, Freidheim, Keiser, Kistinger, Olson, Tsacalis, and Warshaw. Id. at 1121-23. Judge Marra determined, however, that he lacked the

---

[2] Plaintiffs named an additional defendant, Roderick Hills, who passed away in 2014. His estate has been substituted as a party defendant. See In re Chiquita, 190 F. Supp. 3d at 1107 n.9. The claims against Mr. Hills have not been remanded to this Court. See October 4, 2016 Order Vacating, In Part, Conditional Remand Order [Dkt. No. 22-3].

3

authority under 28 U.S.C. § 1407(a) to transfer the claims to cure the jurisdictional defects. Id. at 1123. Accordingly, Judge Marra recommended that the JPML remand the claims against the individual defendants "for a determination by the originating court on whether transfer to a jurisdiction having personal jurisdiction over the Individual Defendants is appropriate under 28 U.S.C. § 1404 or 28 U.S.C. § 1631." Id. at 1125. As Judge Marra explained, "[t]he remand is respectfully suggested for the limited purpose of allowing Plaintiffs in these actions an opportunity to cure the identified jurisdictional defects through transfer to a court having jurisdiction over the Individual Defendants, with this Court's understanding and expectation that the cases may be transferred back to this Court . . . ." Id. Accepting Judge Marra's recommendation, the JPML remanded the claims against the individual defendants to this Court to permit it to address the jurisdictional defects. See October 4, 2016 Remand Order [Dkt. No. 22].[3]

## II. LEGAL STANDARD

Courts have authority under 28 U.S.C. § 1631 to transfer a case filed in the wrong jurisdiction "if it is in the interest of justice" to do so. A case transferred pursuant to Section 1631 "shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." 28 U.S.C. § 1631. There are three requirements for a transfer under 28 U.S.C. § 1631: (1) there must be a lack of jurisdiction in the district court; (2) the transfer must be in the interest of justice; and (3) the transfer may be made only to a court in which the action could have been

---

[3] The JPML also remanded to the United States District Court for the District of New Jersey claims originally filed in that court against defendants Freidheim, Keiser, Kistinger, Olson, and Tsacalis. See October 4, 2016 Remand Order [Dkt. No. 22].

4

brought at the time it was filed or noticed. Freedman v. SunTrust Banks, Inc., 139 F. Supp. 3d 271, 277 (D.D.C. 2015) (citation omitted). The party requesting transfer bears the burden of establishing each of these elements. Id. If a court, upon determining that it lacks jurisdiction over an action, further determines that it would not be in the interest of justice to transfer the action, it may dismiss the action. See Bethea v. Holder, 82 F. Supp. 3d 362, 365 (D.D.C. 2015) (citation omitted).

III. DISCUSSION

Plaintiffs ask this Court to transfer the claims against the individual defendants to districts where the individual defendants would have been subject to personal jurisdiction when this case was filed in 2007. Plaintiffs envision a temporary transfer wherein the claims eventually will return to Judge Marra for pretrial coordination. Defendants urge that dismissal, rather than transfer, is appropriate because plaintiffs did not reasonably believe that the individual defendants were subject to personal jurisdiction in the District of Columbia and brought the claims here in order to gain a strategic advantage.

*A. The Court Lacks Personal Jurisdiction Over*
*The Individual Defendants*

The first element of a transfer under 28 U.S.C. § 1631 requires that the transferor court lack personal jurisdiction over the defendant. See Freedman v. SunTrust Banks, Inc., 139 F. Supp. 3d at 277. Because plaintiffs do not assert that the individual defendants are subject to general personal jurisdiction in this District, only the question of specific jurisdiction is at issue here. Acts sufficient to subject a non-resident defendant to specific personal jurisdiction resulting from conduct within this District are determined by the due process clause and enumerated by the District of Columbia long-arm statute, D.C. Code § 13-423. See Forras v.

5

Rauf, 812 F.3d 1102, 1105-06 (D.C. Cir. 2016); Nat'l Resident Matching Program v. Elec. Residency LLC, 720 F. Supp. 2d 92, 98 (D.D.C. 2010) (citing Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc., 355 A.2d 808, 810-11 (D.C. 1976) (en banc)). To establish personal jurisdiction under Section 13-423(a)(1) of the District of Columbia long-arm statute, a plaintiff must demonstrate that: (1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." Nat'l Resident Matching Program v. Elec. Residency LLC, 720 F. Supp. 2d at 98 (citation omitted).

Plaintiffs' opening brief does not address whether this Court lacks personal jurisdiction over the individual defendants. Seizing on this omission, the individual defendants repeatedly point out that Judge Marra and the JPML left open to plaintiffs the option to argue for personal jurisdiction in this District and plaintiffs declined to do so. See, e.g., Opp. at 12, 15-16. In their reply brief, plaintiffs respond that they "continue to believe this Court has personal jurisdiction" over the individual defendants and advance a theory of personal jurisdiction based on conspiracy jurisdiction. See Reply at 13-16. The Court concludes, however, that plaintiffs' allegations are insufficient to establish personal jurisdiction over the individual defendants in the District of Columbia.

To prevail on a theory of conspiracy jurisdiction under Section 13-423(a)(1) of the District of Columbia long-arm statute, plaintiffs must allege: (1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries. See Jung v. Ass'n of Am. Med. Colleges, 300 F. Supp. 2d 119, 141 (D.D.C. 2004); see also Second

6

Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001). The bare allegation of conspiracy is insufficient; "a plaintiff must allege specific acts connecting [the] defendant with the forum[.]" Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d at 524 (citation omitted). Here, plaintiffs allege that "[s]ome of the Individual Defendants took actions in furtherance of Defendants' arrangement with the AUC while in Washington, D.C.," September 24, 2012 Third Amended Complaint ¶ 2052 [MDL Dkt. No. 575], and that the defendants "all participated in a conspiracy of concealment here in the District of Col[u]mbia." Reply at 13. They maintain in their reply brief that "two or more of the conspirators/Individual Defendants met in the District of Col[u]mbia to further the conspiracy [to fund the AUC and conceal their activities] by agreeing to mislead prosecutors and others so that they could continue to fund the AUC . . . .," id. at 14, while in their complaint they assert that defendants Roderick Hills and Robert Olson and counsel for Chiquita met with Justice Department officials and made misrepresentations of law and facts to them. See September 24, 2012 Third Amended Complaint ¶ 2053 [MDL Dkt. No. 575].

This single assertion about one meeting at the Department of Justice does not create a basis for personal jurisdiction in this District under the District of Columbia long-arm statute. Plaintiffs have failed to plead with particularity the existence of a conspiracy between the alleged co-conspirators or to explain how the single meeting in this District furthered the alleged conspiracy. See FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1097-98 (D.C. Cir. 2008) (rejecting plaintiffs' theory of conspiracy jurisdiction where plaintiffs failed to plead with particularity facts sufficient to demonstrate the existence of a conspiracy or overt acts taken in furtherance thereof). Such vague and conclusory allegations are insufficient to demonstrate that the individual defendants are subject to personal jurisdiction in this District. See Second

Amendment Found. v. U.S. Conference of Mayors, 274 F.3d at 524 (rejecting plaintiffs' theory of conspiracy jurisdiction where they alleged "no specific acts" showing that the defendants agreed to file the lawsuits at issue for the purpose of bankrupting gun manufacturers and dealers).

Plaintiffs argue that they are not relying on a meeting with the Department of Justice as their "anchor" for jurisdiction, but rather on a conspiracy between two individuals – defendants Hills and Olson – within the District of Columbia to mislead the Department of Justice. Reply at 15. They make this distinction presumably in an effort to avoid the application of the "government contacts" exception, which provides that contact with a federal instrumentality located in the District will not give rise to personal jurisdiction under the District of Columbia long-arm statute. See Jung v. Ass'n of Am. Med. Colleges, 300 F. Supp. 2d at 139. Even so, plaintiffs have not pled with particularly the existence of a conspiracy or explained how defendants Hills and Olson supposedly acted in the District of Columbia to advance the alleged conspiracy other than by alleging that the two men participated in a meeting with Department of Justice officials in this District. See September 24, 2012 Third Amended Complaint ¶¶ 2052-54.

Plaintiffs' request for jurisdictional discovery on this issue is denied. See Reply at 15-16. Jurisdictional discovery is justified if a party makes a "detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 130 n.16 (D.D.C. 2000). Given that plaintiffs do not attempt to explain how jurisdictional discovery would help to establish personal jurisdiction and that by their own admission few, if any, acts giving rise to the claims at issue occurred in this District, it is inappropriate to subject the individual defendants to the burden and expense of jurisdictional discovery. See Estate of Klieman v. Palestinian Auth., 82 F. Supp. 3d

8

237, 249 (D.D.C. 2015) (denying request for jurisdictional discovery where requested discovery would not enable plaintiffs "to meet their burden of showing either general or specific personal jurisdiction . . . .").

Because the Court concludes that plaintiffs' allegations are insufficient to establish personal jurisdiction over the individual defendants in this District, the first element of a transfer pursuant to 28 U.S.C. § 1631 is satisfied.

*B. Transfer is in the Interest of Justice*

The core dispute between the parties involves the second element of a transfer under 28 U.S.C. § 1631, whether transfer is in the interest of justice. Plaintiffs argue that transfer is in the interest of justice because their claims may be barred by the statute of limitations if they had to be refiled in a new jurisdiction. Mot. at 2, 8. Defendants respond that transfer is not in the interest of justice and that the case should be dismissed. They argue that dismissal is appropriate because plaintiffs could not reasonably have thought that there was jurisdiction in the District of Columbia and chose to sue here for strategic reasons. Opp. at 9-17

The decision whether a transfer is in the interest of justice rests "within the sound discretion of the district court." Freedman v. SunTrust Banks Inc., 139 F. Supp. 3d at 276-77 (quoting Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983)). In deciding whether to transfer a case, courts consider, inter alia, whether the claims would be time-barred upon refiling, whether transfer would prejudice the defendants' position on the merits, and whether transfer would save the plaintiff the time and expense of refiling in a new district. See Janvey v. Proskauer Rose, LLP, 59 F. Supp. 3d 1, 7 (D.D.C. 2014).[4]

---

[4] Plaintiffs assert that 28 U.S.C. § 1631 includes a presumption in favor of transfer that may be rebutted only if transfer is not in the interest of justice. Mot. at 9, 11-12. The Court has not found a case in this Circuit adopting such a presumption and declines to do so here.

9

The Court concludes that the interest of justice will be served by transferring the claims rather than dismissing them. The possibility that these claims, which have already survived dismissal before Judge Marra, could be permanently time-barred if dismissed weighs in favor of transfer. See Sinclair v. Kleindienst, 711 F.2d 291, 294 (D.C. Cir. 1983) (holding that transfer under an analogous transfer statute, 28 U.S.C. § 1406, is in the interest of justice where "without a transfer the cause of action would be barred by the running of the applicable statute of limitations"); Freedman v. SunTrust Banks, Inc., 139 F. Supp. 3d at 284-85 (holding that transfer was in the interest of justice under 28 U.S.C. § 1631 because plaintiffs would face a potential time-bar upon dismissal).[5] Furthermore, the individual defendants would not be prejudiced by transfer to districts where they reside, where they conducted their business, or where the acts giving rise to the liability occurred. See infra at 12-15. The Court in its discretion therefore concludes that the interest of justice will be served by transferring the claims.[6]

---

[5] Judge Marra partially addressed this concern. Regarding plaintiffs' TVPA claims, Judge Marra found that plaintiffs adequately pled facts to justify equitable tolling through at least 2007, meaning that the TVPA's ten-year statute of limitations might not begin to run until 2007 and thus might not expire until 2017. See In re Chiquita, 190 F. Supp. 3d at 1115-16. As to the Colombian law claims, Judge Marra similarly found that plaintiffs adequately pled facts sufficient to justify equitable tolling, but did not indicate for how long the limitations period would be tolled. Id. at 1124. Although the statute of limitations might be equitably tolled for some period of time, however, he held that the interest of justice nevertheless would be served by "allowing Plaintiffs to attempt to cure the jurisdictional defects" in order to "avoid undue delay and prejudice to Plaintiffs posed by potential time-bars which may impede a refiling of their complaints after dismissal . . . ." Id. at 1123.

[6] It appears that certain plaintiffs refiled their claims against defendants Freidheim and Keiser in the United States District Court for the Southern District of Florida in March 2017. See Opp. at 20 n. 9; Perez 1 v. Chiquita Brands Int'l, Inc., No. 17-cv-60560 (S.D. Fla.). To the extent that action involves the same claims at issue here, dismissal of the claims presently before this Court would not result in additional cost or delay as to certain claims because plaintiffs have already refiled their claims. See Janvey v. Proskauer Rose, LLP, 59 F. Supp. 3d at 9. The possibility that the claims will be time-barred, however, continues to favor transfer in lieu of dismissal.

The Court is not persuaded by the individual defendants' argument that dismissal is warranted because plaintiffs knew or should have known from the outset that personal jurisdiction was lacking in this District and acted for strategic reasons. Rather, it appears that plaintiffs made a non-frivolous, though ultimately mistaken, argument for the exercise of personal jurisdiction in this District. Their mistake does not constitute bad faith or justify dismissal. See Nat'l Fed'n of Blind v. U.S. Dep't of Transp., 78 F. Supp. 3d 407, 415-16 (D.D.C. 2015) (holding that dismissal was not warranted where plaintiffs "had at least a colorable argument for filing in this court in the first instance") (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962)). In this regard, McFarlane v. Esquire Magazine, 74 F.3d 1296 (D.C. Cir. 1996), is of little help to the individual defendants. In McFarlane, the court ruled that dismissal was warranted under 28 U.S.C. § 1406(a) even though the statute of limitations had expired, on the grounds that plaintiff had conceded that jurisdiction was lacking in this District and had been "put on notice" by the defendant's answer that jurisdiction was lacking here. McFarlane v. Esquire Magazine, 74 F.3d at 1301. In contrast, in this case plaintiffs maintained that this District may exercise personal jurisdiction over the individual defendants and asserted a colorable argument in support of that position.

The individual defendants' argument regarding plaintiffs' purported "gamesmanship" is similarly unavailing. They assert that plaintiffs deliberately chose an improper forum in order to gain two strategic advantages: (1) to circumvent a potential timeliness bar by arguing that the claims asserted against the individual defendants in 2012 relate back to the original complaint filed against Chiquita in 2007; and (2) to avoid dismissal based on forum non conveniens by ensuring that federal TVPA claims remained in the case after their TVPA claims against Chiquita were no longer viable in the wake of the Supreme Court's

decision in Mohamad v. Palestinian Authority, 566 U.S. 449 (2012). Opp. at 16-17. These purported strategic advantages, however, are not entirely attributable to plaintiffs. Nor do they rise to the level of bad faith or gamesmanship generally found to warrant dismissal in lieu of transfer. In Janvey, for instance, the court held that dismissal was warranted because the improper choice of forum was apparent from "a minimal amount of research," and because plaintiffs had filed sixty-one related suits in the proper forum and only one suit in the improper forum seemingly to take advantage of a longer statute of limitations in the improper forum. See Janvey v. Proskauer Rose, LLP, 59 F. Supp. 3d at 7-8. In contrast, here plaintiffs' decision to amend the complaint in 2012 was largely a response to an intervening change in the law; plaintiffs added the federal TVPA claims against the individual defendants out of concern that their TVPA claims against Chiquita were no longer viable after the Supreme Court's decision in Mohamad v. Palestinian Authority holding that individuals but not corporations may be held liable under the TVPA.

In sum, the interest of justice favors transfer. Even if plaintiffs were mistaken in believing that this Court had jurisdiction over the individual defendants, plaintiffs' mistakes regarding forum selection do not justify dismissal, particularly where dismissal might spell the end of these claims and transfer would not prejudice the individual defendants' position on the merits.

### C. Personal Jurisdiction is Proper in the Proposed Transferee Courts

A motion to transfer under 28 U.S.C. § 1631 requires that jurisdiction would have been proper in the transferee court when the action was originally brought. Freedman v. SunTrust Banks, Inc., 190 F. Supp. 3d at 277. As a preliminary matter, the parties dispute the relevant date for purposes of the "at the time it was filed" clause of Section 1631. Plaintiffs

12

argue that the naming of the individual defendants in 2012 relates back to the original 2007 filing for statute of limitations purposes and thus assume that 2007 is the relevant date. Mot. at 7 n.4. The individual defendants, however, raise the specter that the transferee courts might consider the date that the individual defendants were added – 2012 – as the operative date. Opp. at 19 n.8. Given that neither party has sufficiently briefed this issue, the Court assumes without deciding that 2007 is the operative date for purposes of 28 U.S.C. § 1631. See Sinclair v. Kleindienst, 711 F.2d at 293-94 (ordering transfer under a similar transfer statute, 28 U.S.C. § 1406, where the new defendants were not added until five years after the complaint was originally filed and the claim would be time-barred if dismissed "regardless of the exact date upon which this action would be deemed to have accrued . . . .").

Plaintiffs seek to transfer the claims against defendants Aguirre, Kistinger, Olson, and Tsacalis to the United States District Court for the Southern District of Ohio. Mot. at 12-15. Plaintiffs assert that defendants Kistinger, Olson, and Tsacalis would have been subject to general personal jurisdiction in Ohio as residents of Ohio in 2007. See Collingsworth Decl. ¶¶ 4-6; Gerber v. Riordan, 649 F.3d 514, 517 (6th Cir. 2011) (holding that general jurisdiction is proper where a defendant's contacts with Ohio are "continuous and systematic"). As to Mr. Aguirre, plaintiffs contend he would have been subject to specific personal jurisdiction in Ohio on the ground that as Chiquita's CEO in 2007, he worked and acted on behalf of Chiquita at its headquarters in Ohio and in doing so allegedly reviewed, approved, and directed the payments to the AUC. Mot. at 15; see Collingsworth Decl. ¶ 8; Conn v. Zakharov, 667 F.3d 705, 712 (6th Cir. 2012) (holding that the Ohio long-arm statute, Ohio Rev. Code Ann. § 2307.382 (A), (C), provides for specific personal jurisdiction for claims arising out of a person's "[t]ransacting any business in [Ohio]" or where the person "[c]aus[es] tortious injury by an act or omission in

[Ohio]."). Considering that the individual defendants do not contest plaintiffs' allegations, the Court concludes that personal jurisdiction likely would have been proper as to defendants Aguirre, Kistinger, Olson, and Tsacalis in the Southern District of Ohio in 2007. See, e.g., Fasolyak v. The Cradle Soc'y, Inc., No. 06-cv-1126, 2007 WL 2071644, at *11 (D.D.C. July 19, 2007) (granting motion to transfer under 28 U.S.C. § 1631 where the jurisdictional allegations suggested that the transferee court "properly may exercise personal jurisdiction over the defendant . . . ."). The Court therefore will transfer the claims against defendants Aguirre, Kistinger, Olson, and Tsacalis to the United States District Court for the Southern District of Ohio.

Plaintiffs seek to transfer the claims against defendants Freidheim and Keiser to the United States District Court for the Southern District of Florida. Mot. at 15-17. Plaintiffs allege that defendants Freidheim and Keiser would have been subject to general personal jurisdiction in Florida as residents of Florida in 2007. See Collingsworth Decl. ¶¶ 7-8; Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010) (holding that "[a] defendant who is engaged in substantial and not isolated activity within [Florida]" is subject to general jurisdiction in Florida). Considering plaintiffs' jurisdictional allegations and the fact that the individual defendants do not contest those allegations, the Court concludes that personal jurisdiction likely would have been proper as to defendants Freidheim and Keiser in the Southern District of Florida in 2007.[7] The Court therefore will transfer the claims against defendants Freidheim and Keiser to the United States District Court for the Southern District of Florida.

---

[7] Because plaintiffs do not explain how they propose to supplement their allegations through discovery, their request for jurisdictional discovery on this point is denied. See Mot. at 19.

14

In sum, in light of the evidence offered by plaintiffs and the lack of any contrary evidence proffered by the individual defendants, the Court finds that personal jurisdiction over the individual defendants in the proposed transferee courts would have been proper at the time that plaintiffs filed their original complaint in 2007. The final requirement of a transfer under 28 U.S.C. § 1631 is thus satisfied.

### D. Severance of the Claims is Proper

In this case, where no single court has personal jurisdiction over all of the individual defendants, the parties do not dispute that the claims must be severed before they can be transferred to the proper jurisdiction. The federal rules permit the Court to sever claims within the same action at any stage of the proceedings. FED. R. CIV. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). "Claims against different parties can be severed for trial or other proceedings, under [Rule 21], if the Court determines in its discretion that the interests of justice would be served by doing so." In re Vitamins Antitrust Litig., No. 99-ms-197, 2000 WL 1475705, at *17 (D.D.C. May 9, 2000). "Once a claim has been severed, however, it proceeds as a discrete unit with its own final judgment . . . ." Disparte v. Corp. Exec. Bd., 223 F.R.D. 7, 12 (D.D.C. 2004). In evaluating a request to sever, courts consider whether severance "would prejudice any party, or would result in undue delay." Davidson v. District of Columbia, 736 F. Supp. 2d 115, 120 (D.D.C. 2010) (citation omitted). Courts also consider the "resulting multiplicity of litigation" and its attendant potential for confusion, inefficiency, and inconsistent findings. See Wultz v. Islamic Republic of Iran, 762 F. Supp. 2d 18, 32-33 (D.D.C. 2011).

Plaintiffs ask the Court to sever the claims for purposes of transfer to cure the jurisdictional defects before the claims are sent back by the transferee court to Judge Marra for

pretrial coordination. Mot. at 13. Defendants respond that severance is inappropriate because it would result in duplicative litigation and create a substantial risk of inconsistent judgments. Opp. at 22. They argue that the claims against Chiquita and the Estate of Roderick Hills will remain before Judge Marra for purposes of pretrial coordination but will return to this Court for trial. See supra note 2. They contend that if the claims are severed and transferred, this single action will become three separate actions involving plaintiffs' claims against: (1) Chiquita and the Estate in this Court; (2) defendants Aguirre, Kistinger, Olson, Tsacalis in Ohio; and (3) defendants Freidheim and Keiser in Florida. Opp. at 21.

The Court concludes that severance is the proper course of action in this case. Although the individual defendants correctly assert that severance would result in multiple courts assessing the same set of claims and facts, the prospect of multiple suits in different jurisdictions is unavoidable here – and not unusual in multidistrict litigation cases – because Chiquita and other defendants already are facing trial in different districts after pretrial coordination before Judge Marra is complete. See Sharp Elecs. Corp. v. Hayman Cash Register Co., 655 F.2d 1228, 1230 (D.C. Cir. 1981) (holding that where plaintiffs could proceed against some, but not all, defendants in the local forum, "the appropriate course of action would appear to be severance") (per curiam). Accordingly, severance of the claims for purposes of transfer to the proper jurisdictions is appropriate.

*E. Defendant Warshaw*

Steven Warshaw is one of the seven individual defendants who was remanded to this Court due to a defect in personal jurisdiction. Plaintiffs now state, however, that they "are not pursuing their claim against Defendant Warshaw." Reply at 10 n.2. The remaining claims against Mr. Warshaw therefore will be dismissed.

16

## IV. CONCLUSION

For the reasons set forth in this Opinion, the Court finds that it lacks personal jurisdiction over the individual defendants, that transfer is in the interest of justice, and that jurisdiction is proper in the proposed transferee courts. Plaintiffs' motion to transfer pursuant to 28 U.S.C. § 1631 [Dkt. No. 38] therefore will be granted. The claims against individual defendants Aguirre, Kistinger, Olson, and Tsacalis will be severed pursuant to Rule 21 of the Federal Rules of Civil Procedure and transferred to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1631. The claims against individual defendants Freidheim and Keiser will be severed pursuant to Rule 21 of the Federal Rules of Civil Procedure and transferred to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1631. Plaintiffs' requests for jurisdictional discovery will be denied. The claims against Mr. Warshaw will be dismissed. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: January 11, 2018